**Billie J. CROYLE and Bonnie Croyle, Appellants**

v.

**Ray F. SMITH, Sunflower Carriers, A Division of Crete Carrier Corporation, Shaffer Trucking, Inc., A Division of Crete Carrier Corporation, Crete Carrier: Corporation and Duane W. Ackle, Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 29, 2006.

Filed Feb. 22, 2007.

Mark A. Givler, Lock Haven, for appellants.

Douglas B. Marcello, Carisle, for appellees.

BEFORE: FORD ELLIOTT, P.J., LALLY–GREEN, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Billie J. Croyle and Bonnie Croyle (the Croyles) appeal from the judgment entered on June 2, 2006, after the trial court denied the Croyles' post-trial motion for a new trial. This case arises out of a collision between Billie J. Croyle's (Croyle) motorcycle and Ray F. Smith's (Smith) tractor trailer. Croyle was injured in the accident and as a result filed suit against Smith and his employer Sunflower Carriers, a division of Crete Carrier Corporation, Shaffer Trucking, Inc., a division of Crete Carrier Corporation, Crete Carrier Corporation and Duane W. Ackle (collectively the Appellees). Following a jury trial, a jury found Smith and Croyle to be comparatively negligent with Smith being 47% negligent and Croyle 53% negligent. On appeal, the Croyles request a new trial based on errors by the trial court in refusing to allow them to introduce, under the Rules of Evidence, various prior statements of a witness to the accident. The

Croyles argue that the trial court should have admitted a written summary of the witness's recorded statement given approximately two weeks after the accident as extrinsic evidence of a prior inconsistent statement and as substantive evidence under the prior recorded recollection exception to the hearsay rule. The Croyles also argue that the trial court should have allowed a police officer to testify to the statements made by the witness at the scene of the accident under either the present sense or excited utterance exceptions to the hearsay rule. After study, we find no merit in the Croyles' assertions. Accordingly, we affirm the trial court's judgment.

¶ 2 This matter arises out of an August 20, 2002 collision between a motorcycle operated by Croyle and a tractor trailer operated by Smith. Croyle was traveling southbound while Smith was traveling northbound on State Route 64 in Spring Township, Centre County. Croyle was riding his motorcycle just ahead of his coworker James Bickle. Thomas Dunbar drove another tractor trailer which was directly behind Smith's. As Smith attempted to make a left turn onto the State Route 26 bypass, Croyle crashed his motorcycle into the back of the trailer. Croyle attempted to stop but could not do so in time. As a result of the collision, Croyle suffered a broken leg as well as other injuries.

¶ 3 On October 23, 2003, the Croyles brought suit against the Appellees seeking damages relating to the injuries Croyle suffered. A jury trial was held on January 3 and 4, 2006. At trial, the parties set forth competing versions regarding the position of Croyle's motorcycle on Route 65 when Smith began to make the left turn onto the Route 26 bypass along with the speeds of the two vehicles prior to the collision. Croyle and Bickle both placed Croyle about 220 feet from the point of impact. Smith on the other hand placed Croyle more than 400 feet from the point of impact. Smith's claim during the trial was that because of this distance, Croyle was inattentive and therefore the cause of the collision. Dunbar, who was driving directly behind Smith, witnessed the collision and the positions of the motorcycle and the trailer immediately prior to and during the collision and provided testimony that supported Smith's position. The Croyles attempted to impeach Dunbar's testimony by introducing prior inconsistent statements regarding the positioning of Croyle's motorcycle and the companion motorcycle. Dunbar gave a narrative statement to a police officer, Michael Danneker, at the scene indicating what occurred prior to the accident. On September 3, 2002, Dunbar also gave a statement to an investigator of the insurance company covering Smith. This statement was apparently recorded on audio tape; however the recording was lost. The investigator made a summary of Dunbar's statement. The trial court did not allow either the summary or Dunbar's statements to Officer Danneker into evidence.

¶ 4 After hearing testimony and reviewing the evidence, the jury returned a verdict finding both Croyle and Smith to be comparatively negligent, with Smith being 47% negligent and Croyle being 53% negligent, with one juror dissenting. The Croyles filed post-trial motions requesting a new trial on the ground that the trial court erred in excluding various pre-trial statements made by Dunbar. The trial court denied the motion on April 5, 2006. Thereafter, the Croyles filed a notice of appeal. The trial court, however, informed counsel for the Croyles that such an appeal would be premature as no final order of the judgment was ever filed. Consequently, after the Croyles filed a praecipe for entry of a final judgment, the

prothonotary entered a final judgment on June 2, 2006.

¶ 5 The Croyles now appeal, raising the following questions for our review:

A. Did the trial court err as a matter of law, justifying grant of a new trial, by not permitting plaintiffs to introduce defendants' investigator's written summary of witness Thomas Dunbar's recorded statement of September 3, 2002, as extrinsic evidence of a prior inconsistent statement, where the defendants lost or destroyed the recording?

B. Did the trial court err as a matter of law, justifying grant of a new trial, by not permitting plaintiffs to introduce defendants' investigator's written summary of Thomas Dunbar's recorded statement of September 3, 2002[,] as substantive evidence where the recording itself would have been so admissible but was unavailable, because the defendants lost or destroyed it?

C. Did the trial court err as a matter of law, justifying grant of a new trial, by refusing to allow witness police officer, Michael Danneker, to testify to the content of a statement made to him by Thomas Dunbar at the scene on August 20, 2002, under either or both of the present sense impression and excited utterance exceptions to the hearsay rule[?]

Brief for Appellants at 3.

 ¶ 6 When this Court is presented with an appeal from a denial of a motion for a new trial, "[w]e will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion." *Stalsitz v. Allentown Hosp.*, 814 A.2d 766, 771 (Pa.Super.2002) (citation omitted). "We must review the court's alleged mistake and determine whether the court erred and, if so, whether the

error resulted in prejudice necessitating a new trial." *Id.* (citation omitted). "If the mistake concerned an error of law, the [reviewing] court will scrutinize for legal error." *Harman ex. rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1123 (2000).

¶ 7 In support of their first question, the Croyles contend that the trial court erred in not allowing them to introduce the investigator's summary of Dunbar's statement as extrinsic evidence of a prior inconsistent statement. Brief for Appellants at 15. The Croyles argue that by denying its claim, the jury was unable to hear all of the relevant evidence in determining Dunbar's credibility. Brief for Appellants at 21–22. The Croyles claim the crucial element of the summary was that Dunbar told the investigator that he saw two motorcycles, those of Croyle and Bickle, coming from the opposite side of the road. Brief for Appellants at 11. Ostensibly, this would have demonstrated that the motorcycles were close to Smith's trailer prior to the collision. At his deposition, Dunbar stated that he only saw one motorcycle.

¶ 8 It is well-settled that:

The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus our standard of review is very narrow.... To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*McManamon v. Washko*, 906 A.2d 1259, 1268–69 (Pa.Super.2006) (citations and internal quotation marks omitted).

¶ 9 Here, the Croyles attempt to admit the investigator's summary for impeachment purposes under Pennsylvania Rule of Evidence 613(b) which states:

**Rule 613. Prior statements of witnesses**

\* \* \* \*

(b) **Extrinsic evidence of prior inconsistent statement of witness.** Unless the interests of justice otherwise require, extrinsic evidence of a prior inconsistent statement by a witness is admissible only if, during the examination of the witness,

(1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness;

(2) the witness is given an opportunity to explain or deny the making of the statement; and

(3) the opposing party is given an opportunity to question the witness. This section does not apply to admissions of a party-opponent as defined in Rule 803(25) (relating to admissions by a party-opponent).

Pa.R.E. 613(b). "A party may impeach the credibility of an adverse witness by introducing evidence that the witness has made one or more statements inconsistent with his trial testimony." *McManamon*, 906 A.2d at 1268 (citation omitted). However, it must be established "that when attempting to discredit a witness'[s] testimony by means of a prior inconsistent statement, the statement must have been made or adopted by the witness whose credibility is being impeached." *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621, 638 (1995) (citation omitted). "A summary of a witness'[s] statement cannot be used for impeachment purposes absent adoption of the statement by the witness as his/her own." *McManamon*, 906 A.2d at 1268 (citation and brackets omitted).

This is because it would be unfair to impeach the witness on cross-examination on the interpretation of the person who made the summary rather than the verbatim words of the witness. *See Simmons*, 662 A.2d at 638.

¶ 10 In the case at bar, Dunbar did not testify at the trial but instead gave a video deposition which was presented to the jury. Both parties' attorneys were present at the deposition and examined Dunbar. The Croyles sought to have the summary itself admitted at trial so that the jury could have made a proper credibility determination as to Dunbar's testimony. However, at Dunbar's deposition, the Croyles' attorney examined Dunbar regarding his discussions with the insurance company's investigator. The Croyles' attorney asked Dunbar whether he remembered making the statements and asking specifically whether he remembered stating he saw two motorcycles prior to the collision. Notes of Testimony (N.T.), 5/9/05, at 40. After reading over the summary, Dunbar stated that the summary indicated that he had seen two motorcycles and that he believed the summary was accurate. N.T., 5/9/05, at 40–42. Nevertheless, Dunbar maintained in his deposition that he only remembered seeing a single motorcycle. N.T., 5/9/05, at 42. This examination by the Croyles' counsel put before the jury any inconsistencies between Dunbar's recollection at the time of the deposition and his statements to the investigator even though the Croyles presented no evidence that Dunbar adopted the summary or that the summary contained Dunbar's verbatim statements. *See McManamon*, 906 A.2d at 1269; *Simmons*, 662 A.2d at 638. The record is thus clear that the trial court allowed the Croyles a fair opportunity to impeach Dunbar. As the Croyles have already received the result they seek, namely allowing the

jury to make a credibility determination as to Dunbar's recollection of the accident, they do not demonstrate they suffered prejudice when the trial court refused to permit the summary to be introduced as evidence at trial for impeachment purposes. *See McManamon*, 906 A.2d at 1269–70 (concluding that counsel who used statements in a summary report to impeach witnesses during cross-examination did not suffer prejudice when summary not allowed into evidence). As such, we conclude the trial court acted within its discretion and hence find no merit in the Croyles' first question.

■ ¶ 11 In support of their second question, the Croyles contend that the trial court erred in refusing to admit the summary of Dunbar's statements as substantive evidence under Pa.R.E. 803.1(3). Brief for Appellants at 22–23. The Croyles argue that they would meet each of the elements of Rule 803.1(3) if Smith had not lost the recording of Dunbar's statement. Brief for Appellants at 23.

■ ¶ 12 Pennsylvania Rule of Evidence 803.1(3) states:

**Rule 803.1. Hearsay exceptions; testimony of declarant necessary**

The following statements, as hereinafter defined, are not excluded by the hearsay rule if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement:

* * * *

**(3) Recorded recollection.** A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness'[s] memory, providing that the witness testifies that the record correctly reflects that knowledge. If admitted, the memorandum or record may be read into evidence and received as an exhibit, but may be shown to the jury only in exceptional circumstances or when offered by an adverse party.

Pa.R.E. 803.1(3). This exception only applies where the witness lacks a present recollection of the event. *See id.; Commonwealth v. Young*, 561 Pa. 34, 748 A.2d 166, 177 (1999).

¶ 13 In the case at bar, Dunbar had a present recollection of the collision. He maintained in his deposition that he only remembered one motorcycle prior to the collision. N.T., 5/9/05, at 42. The Croyles in no way demonstrate that Dunbar did not have a present recollection at the time of his testimony. In fact, the Croyles' only argument is that they would have been able to fulfill the requirements of Rule 803.1(3) if the Appellees had not lost the recording. Brief for Appellants at 23–24. However, the Croyles provide no citation to authority to support this proposition. *See* Pa.R.A.P. 2119(a) (stating argument must provide citation to pertinent authority).

¶ 14 Here, the trial court instructed the jury to presume the recorded statement would have been unfavorable to the Appellees. N.T. (Jury Charge), 1/4/06, at 40–41. The Croyles argue that the Appellees should not be able to profit from its own negligence in losing the recording of Dunbar's statement and that the summary should have been admitted in lieu of an unfavorable instruction. Brief for Appellants at 24–25. However, the Croyles cite to no case law to suggest that the loss of a recording would allow the summary of that recording to be admitted as substantive evidence. Furthermore, the Croyles do not demonstrate that the trial court abused its discretion in giving the instruc-

tion. *See Mount Olivet Tabernacle v. Edwin L. Wiegand Div.*, 781 A.2d 1263, 1273 (Pa.Super.2001) (stating an instruction is often given when a party fails to preserve evidence "because it is considered the least onerous penalty commensurate" with the degree of fault and prejudice). As such, we find no merit in the Croyles' second argument.

¶ 15 In support of their third argument, the Croyles contend that Dunbar's statements to Officer Michael Danneker after the accident were admissible under either the present sense impression or excited utterance exceptions to the hearsay rule. Brief for Appellants at 25. The Croyles argue that Officer Danneker would have testified that Dunbar's version at the scene was different than the one given at the deposition. Brief for Appellants at 26.

¶ 16 Initially, we note that the Croyles have not indicated anywhere in their brief or the record what Officer Danneker would have testified as to Dunbar's statements at the scene. The Croyles only state that Dunbar provided Officer Danneker with a narrative account of what occurred prior to the accident but do not indicate what Dunbar said. Brief for Appellants at 9–10 (citing N.T. (Danneker), 1/3/06, at 17–20). Here, the trial court found that Dunbar's statements to Officer Danneker, which were given approximately ten minutes after the accident, did not constitute an excited utterance or a present sense impression. Trial Court Opinion (T.C.O.), 6/16/06, at 3–5. We agree.

¶ 17 Pennsylvania Rule of Evidence 803(2) allows for the admission of an excited utterance as an exception to the hearsay rule. Rule 803(2) defines an excited utterance as: "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Pa.R.E. 803(2). For a statement to be considered an excited utterance, it must be made spontaneously:

[A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.... Thus, it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective though[t] processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event.

*Commonwealth v. Gray*, 867 A.2d 560, 570 (Pa.Super.2005) (citation omitted). Additionally, when determining whether a statement is an excited utterance, the following factors must be considered: "whether the statement was in narrative form, the elapsed time between the startling event and the declaration, whether the declarant had an opportunity to speak with others and whether, in fact, she did so." *Id.* (citation omitted). There is no bright line rule as to the amount of time which has elapsed between the accident and the witness's statement, rather "[t]he crucial question, regardless of time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." *Commonwealth v. Carmody*, 799 A.2d 143, 147 (Pa.Super.2002) (citation omitted).

¶ 18 The Croyles argue that Dunbar's statements constituted an excited utterance because he was "upset" when making

the statements as he had just seen the startling event of an accident and Croyle's injury. Brief for Appellants at 26. However, upon consideration of the aforementioned factors, we do not find that the trial court abused its discretion in omitting Dunbar's statements. First, Dunbar had spoken to Bickle and Smith and checked to make sure Croyle was okay prior to making the statement. N.T., 5/9/05, at 33–34; N.T. (Bickle), 1/3/06, at 14–15. Second, Dunbar's statement was in response to a question posed by Officer Danneker. N.T. (Danneker), 1/3/06, at 8. Third, according to Officer Danneker's testimony, Dunbar's statement was in a narrative form, not a single reaction to the accident. N.T. (Danneker), 1/3/06, at 17–20 (stating Dunbar gave a full account of what occurred prior to the accident). While none of these factors alone would be dispositive, we conclude that taken as a whole, Dunbar's statement to Officer Danneker lost "the conditions of being made 'under the stress of excitement caused by the [accident].' " T.C.O., 6/16/06, at 4 (citation omitted). *See Hammel v. Christian*, 416 Pa.Super. 78, 610 A.2d 979, 982 (1992) (concluding that statement by witness to police officer fifteen to eighteen minutes after an accident and after the witness had spoken to two of the parties involved in the accident did not constitute an excited utterance). As the Croyles have not demonstrated that Dunbar's narrative statement to Officer Danneker constituted an excited utterance, we conclude that the trial court did not abuse its discretion in omitting this testimony.

¶ 19 The Croyles also argue that the statement should have been admitted as a present sense impression. Brief for Appellants at 30. Pennsylvania Rule of Evidence 803(1) allows for the admission of a present sense impression where "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Pa. R.E. 803(1). "This exception permits testimony of declarations concerning conditions or events observed by the declarant regardless of whether the event was exciting." *Gray*, 867 A.2d at 571. "[T]he trustworthiness of the statements depends upon the timing of the statement." *Id.* "The observation must be made at the time of the event or so shortly thereafter that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation." *Id.* (citation omitted).

¶ 20 The Croyles provide no support for their argument that Dunbar's statement should have been admitted as a present sense impression. *See* Brief for Appellants at 31. Again, Dunbar spoke to both Smith and Bickle and waited for over ten minutes before making the statements to Officer Danneker. As such, we cannot conclude that this statement falls under the present sense impression exception to the hearsay rule. Accordingly, we find no merit in the Croyles' third question.

¶ 21 For the foregoing reasons, we affirm the judgment.

¶ 22 Judgment **AFFIRMED.**