**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LOUTFI ARABATLIAN, AS ADMINISTRATOR OF THE ESTATE OF ZWART ARABATLIAN, DEC'D AND LOUTFI ARABATLIAN, AS ADMINISTRATOR OF THE ESTATE OF KEVORK ARABATLIAN, DEC'D, | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : : | |
| LAURA PLATT, | : : | |
| Appellee | : | No. 2541 EDA 2013 |

Appeal from the Judgment Entered October 3, 2013
In the Court of Common Pleas of Chester County
Civil Division No(s).: 08-11584

BEFORE: ALLEN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED DECEMBER 29, 2014**

Appellant/plaintiff, Loutfi Arabatlian, as the administrator of the estates of his late parents, Zwart Arabatlian and Kevork Arabatlian, appeals from the judgment entered in the Chester County Court of Common Pleas in favor of Appellee/defendant, Laura Platt. In this wrongful death/car accident case,[1] a jury found Appellee was not negligent. The sole issues on appeal

---

[*] Former Justice specially assigned to the Superior Court.

[1] The wrongful death action pertained to Zwart Arabatlian.

are whether the trial court erred in not admitting hearsay testimony under the excited utterance and present sense impression exceptions. We affirm.

This case arises from a two-car accident on the "rainy, misty"[2] night of October 19, 2006. Kevork Arabatlian was driving one car; his wife, the decedent in this case, Zwart Arabatlian, was his passenger. Mr. Arabatlian was seventy-eight years old at the time and his first language was Armenian. Trial Ct. Op., 10/3/13, at 2-3. The trial court stated, "It is a fair inference from the evidence in this case that Mr. Arabatlian was not fluent in the English language, or at least, spoke with a pronounced Armenian accent." *Id.* at 3. Appellee was the driver of the other vehicle and was sixteen years old at the time of the accident. N.T. Trial, 4/10/13, at 6.

Ms. Arabatlian subsequently died.[3] On October 17, 2008, Mr. Arabatlian and his son, Appellant, acting as administrator of Ms. Arabatlian's estate, commenced the instant suit by filing a praecipe to issue a writ of summons. Their third amended complaint, filed October 6, 2009, set forth four counts: wrongful death, negligence, intentional infliction of emotional distress, and a survival action. On April 8, 2013, Appellant filed notice that

---

[2] *See* N.T. Trial, 4/9/13, at 7 (direct examination testimony of Police Sergeant David Leahy).

[3] Appellee asserts on appeal that the issues of Ms. Arabatlian's "injuries and cause of death were hotly contested at trial." Appellee's Brief at 6 n.1. Nevertheless, because the jury found Appellee was not negligent, it did not reach the second question on the verdict slip: whether Appellee's negligence "was the cause of or at least a substantial factor in bringing about loss and damage to" Appellant. Verdict Slip, 4/12/13.

Mr. Arabatlian had died, and Appellant, as administrator of Mr. Arabatlian's estate, was substituted as a party.

On the night of the accident, Appellee was driving south on Route 352. Mr. Arabatlian was stopped at a stop sign on Carmac Street, at a "T-intersection," waiting to turn left and northbound onto Route 352. *See* N.T., 4/9/13, at 36. Mr. Arabtlian's car hit the right side of Appellee's vehicle. *See id.* at 49. Appellant's theory of the case was that Mr. Arabatlian waited for two cars to pass, did not see Appellee's car because its headlights were **off**, turned, and the two cars collided. Appellee's defense was that her headlights were **on** and Mr. Arabatlian failed to yield the right-of-way. *See* Appellee's Brief at 7.

On February 8, 2012, Appellee filed pre-trial motions *in limine* to exclude, *inter alia*, as inadmissible hearsay post-accident statements, made by both Mr. and Mrs. Arabatlian, that Appellee's headlights were not on. According to Appellee, the trial court granted the motion in part and denied it in part: the court precluded responding police officer Sergeant David Leahy from testifying about Mr. Arabatlian's statements, but allowed two neighbors to testify about statements made by both Mr. and Mrs. Arabatlian.[4] Appellee's Brief at 9.

---

[4] Appellee states that "[i]t appears that the trial court's pre-trial ruling did not become a part of the record." Appellee's Brief at 10 n.3. However, Appellee notes that the court's evidentiary rulings at trial, which we discuss *infra*, were consistent with its purported pre-trial rulings. On appeal,

The case proceeded to a jury trial on April 8, 2013, almost six-and-a-half years after the accident. We review in detail the testimony of Sergeant Leahy and the two neighbors, as well as Appellee's hearsay objections and the court's rulings.

Appellant's first witness was Sergeant Leahy, who testified to the following. He arrived at the scene within two minutes of receiving a call about the accident. *Id.* at 10. Upon questioning by the court, Sergeant Leahy clarified that he did not know what time the accident occurred. *Id.* at 11. The sergeant "viewed the area," "assess[ed] the scene," and approached Mr. Arabatlian, who was standing outside his vehicle. *Id.* at 11-12. Ms. Arabatlian was still in the passenger seat and "appeared to be in pain." *Id.* at 15-16. The first objection to testimony about what Mr. Arabatlian said transpired as follows:

> [Appellant's counsel, to Sergeant Leahy:] When you approached [Mr. Arabatlian,] what is the first response or the first thing that he said to you?
>
> [Appellee's counsel:] Objection.
>
> [Appellant's counsel:] I withdraw the question. That's a very poor question. I withdraw the question.
>
> THE COURT: All right, it's withdrawn. Next question.

*Id.* at 12.

Next, Appellant's counsel asked Sergeant Leahy to describe Mr.

---

Appellant makes no mention of Appellee's motions *in limine* or the trial court's ruling on them.

J. A13035/14

Arabatlian's demeanor. Sergeant Leahy responded that Mr. Arabatlian was "emotionally distraught[,] very panicked[,] just very upset about the whole incident[.]" *Id.* at 12-13. The next objection came as follows:

>      [Appellant's counsel:]  What is the first thing you recall saying when you approached [Mr. Arabatlian]?
>
>      [Sergeant Leahy:]  I asked him what had happened. He advised me that—.
>
>      [Appellee's counsel:]  Objection.
>
>      THE COURT:  Sustained.
>
>      [Appellant's counsel:]  When you saw [Mr. Arabatlian,] when you said that, did he make any type of a gesture or make any sounds to you?
>
>      [Sergeant Leahy:]  Yes.  He stated that—
>
>      [Appellee's counsel:]  Objection.
>
>      [Appellant's counsel:]  No, not what he said.  Right now I just want to get into what his demeanor was and how he responded to you without getting into—
>
>      [Sergeant Leahy:]  He responded in a very panicked manner.
>
>                    *    *    *
>
>      [H]e was emotionally distraught.  He was shaking, he was visibly shaken, visibly upset.

*Id.* at 13.  In response to the next several questions, Sergeant Leahy stated Mr. Arabatlian was speaking in a "very shaken [and] panicked" way, his voice was panicked and emotional and "not at a level of normal speaking," and he "immediately responded to [the sergeant's] questions." *Id.* at 14.

- 5 -

The third objection arose:

> [Appellant's counsel:]   What, in terms of the tone of voice and the emotion and the panic, how did he—what did he tell you?
>
> [Appellee's counsel:]  Objection.
>
> THE COURT:  Sustained.

*Id.* at 14.

Appellant's counsel then asked Sergeant Leahy about his observations of Ms. Arabatlian during this time, as well as the sergeant's usual procedure of asking certain questions when arriving at the scene of accident where people were still in their cars.  *Id.* at 15-17.  The final objection arose as follows:

> [Appellant's counsel: W]hen you would have [asked Mr. Arabatlian if he was] okay, did Mr. Arabatlian blurt something out?
>
> [Appellee's counsel:]  Objection—withdrawn. . . .
>
> THE COURT:  It's just a yes or no.
>
> [Sergeant Leahy:]  Yes.
>
> [Appellant's counsel:]  What's the first thing—when he blurted something out, was he responding to whether everyone is okay or was he blurting out something totally different?
>
> [Appellee's counsel:]  Objection.
>
> THE COURT:  Sustained.
>
> [Appellant's counsel:] Judge, can we see you at sidebar?

THE COURT: No. Next question, please.

*Id.* at 17-18.

In its opinion, the court also considered the testimony of Appellant's witnesses, husband-and-wife Mark Crupi and Anne Jordan. *See* Trial Ct. Op. at 7-8. Crupi testified to the following. On the night of the accident, he and Jordan were on their back porch, which faced Carmac Street. N.T., 4/9/13, at 69-70. They heard a loud crash, ran to the intersection, and "were there within two minutes." *Id.* at 70-71. They arrived there before police. *Id.* at 77.

Crupi and his wife approached the Arabatlians' car. Mr. Arabatlian was attempting to get out of the car and "was in a panic." *Id.* at 72. Crupi testified, "He was, I guess, going into shock, screaming 'no lights, no lights, no lights, no lights.' . . . Two cars passed and no lights." *Id.* at 73. Appellee objected, but the court overruled the objection. *Id.* Crupi testified that as Mr. Arabatlian was saying this, he pointed to the car in the middle of the street, which was not occupied, had one door open, and had no lights on "except the dome light." *Id.* at 73-75. Crupi walked over to the car, saw that engine was still running, and that the headlights and taillights were **not** on, turned off the ignition, and returned to the Arabatlians. *Id.* at 75-76. Crupi was scared when he saw Ms. Arabatlian; she "was turning white right in front of" them and Crupi "thought she was going to die." *Id.* at 77.

Anne Jordan testified as well, corroborating her husband's testimony

that they were on their back porch, heard a crash, and went outside to investigate. *Id.* at 98. Mr. and Mrs. Arabatlian were in their car and appeared "really upset" and confused. *Id.* at 100. Mr. Arabatlian "was trying to get out of the car," and Crupi helped him. *Id.* The court then sustained an objection to Jordan's testimony about what Mr. Arabatlian said:

> [Appellant's counsel]: Before anyone said anything to the elderly couple[,] did you hear the elderly man do anything?
>
> [Jordan:] Yes, yes.
>
> Q. What?
>
> A. They were upset that there was no lights.
>
> [Appellee's counsel:] Objection.
>
> THE COURT: Sustained.

*Id.* at 101. Jordan further testified that Appellee's car's engine was running but its headlights and taillights were off. *Id.* at 102.

When asked about Ms. Arabatlian's demeanor, Jordan was permitted to testify about what Ms. Arabatlian said: "She scared me. She was so upset. She was holding her chest. She kept repeating the same thing, 'no lights, no lights.'" *Id.* at 102. Appellee objected on hearsay grounds, but the court overruled the objection. *Id.* at 102-03.

On April 12, 2013, the jury returned a verdict, finding Appellee was not negligent. On April 22nd, Appellant filed a motion for post-trial relief, arguing, *inter alia*, that the trial court erred in precluding Sergeant Leahy

from testifying about Mr. Arabatlian's excited utterance.[5]  Appellant filed a supporting brief which further claimed that Mr. Arabatlian's statement should have been admitted as a present sense impression.  The trial court held oral argument on July 19th and denied the motion on August 14th.

Appellant filed a notice of appeal on September 3rd, and judgment in favor of Appellee was entered on September 24th.[6]  Appellant presents two issues for our review: whether the trial court erred in not allowing, under the excited utterance and present sense impression hearsay exceptions, Sergeant Leahy to testify about Mr. Arabatlian's statement to him.

At this juncture, we summarize the trial court's opinion as follows. Appellant "never established the exact words of [Mr.] Arabatlian to which Sergeant Leahy would have testified[,] nor that Sergeant Leahy remembered [Mr.] Arabalitan's exact words."  Trial Ct. Op. at 2.

> In his post-trial motion, [Appellant] states "[T]he excited utterance was that [Mr.] Arabatlian was traveling on Carmac Street and brought his vehicle to a stop at the stop sign at [Route 352] at which time he let two vehicles pass who were traveling southbound and then proceeded to

---

[5] Appellant also argued that the jury verdict was against the weight of the evidence and the court erred in charging the jury that Appellee's negligence had to have caused the accident.  They do not pursue these issues in the instant appeal.

[6] Although Appellant purported to appeal from the order denying his post-trial motion, we deem the appeal is filed from the judgment subsequently entered. **See** Pa.R.A.P. 905(a)(5) (providing notice of appeal filed after announcement of determination but before entry of appealable order shall be treated as filed after such entry and on day thereof); **Jenkins v. Wolf**, 911 A.2d 568, 569 n.1 (Pa. Super. 2006).

attempt to turn left when he was struck by the vehicle operated by [Appellee] with [Mr.] Arabatlian uttering [Appellee's] vehicle did not have its lights on at the time of the crash." In his brief in support of the motion, [Appellant] states "[I]t was anticipated that Sergeant Leahy would have testified with respect to the excited utterance of [Mr.] Arabatlian, that [Mr.] Arabatlian blurted out that he was stopped at the stop sign and let two cars heading southbound on [Route 352] pass before entering onto [Route 352], and [Mr.] Arabatlian blurted out that [Appellee's] vehicle did not have its headlights on at the time of the crash." Quite a "blurt out" and, in any event, clearly not [Mr.] Arabatlian's actual statement [sic]. The police report is clearly in the language of Sergeant Leahy and is **not** a quotation of any statement made by [Mr.] Arabatlian. . . .

*Id.* at 3-4 (quoting Appellant's Brief in Support of Mot. for Post-Trial Relief, 7/1/13, at 7; Appellant's Mot. for Post-Trial Relief, 4/22/13, at 2). The court reasoned Appellant's

position depends upon Mr. Arabatlian being upset, shaken, panicked and emotionally distraught at the time of his conversation with Sergeant Leahy. Under that circumstance, what could be deemed an excited utterance is what Mr. Arabatlian said and not Sergeant Leahy's interpretation of what Mr. Arabatlian meant.

*Id.* at 3.

As stated above, on appeal Appellant first avers the trial court erred in precluding Sergeant Leahy from testifying about Mr. Arabatlian's purported excited utterance. He repeatedly avers throughout his brief that in the accident, Ms. Arabatlian "suffered severe painful and debilitating injuries including numerous fractured ribs[ and] a lacerated liver[ and that] eyewitnesses testif[ied] she was in pain[ and] turning white and that they

- 10 -

were fearful she" would die. *See* Appellant's Brief at 5, 6, 14, 18, 23. Appellant also repeatedly asserts that Mr. Arabatlian was upset, distraught, panicked, and shaking, and that within minutes of the accident, he "blurted out" a statement to Sergeant Leahy, "which was memoralized by the [sergeant] contemporaneously when it was made." *Id.* at 23, 24. With respect to the trial court's opinion that he "never established" Mr. Arabatlian's "exact words," Appellant maintains "that Sergeant Leahy was the very first witness called at trial with the Trial Court not knowing what, if anything, any of the other witnesses may say." *Id.* at 25. Appellant avers his "counsel immediately and timely asked for a sidebar . . . to make an offer of proof and, if necessary, invite the Trial Court to have an in camera inquiry of Sergeant Leahy as [to whether he had] a specific recollection as to what was 'blurted out.'" *Id.* at 24-25. However, Appellant states, the trial court denied the request for a sidebar discussion. We find no relief is due.

We note the relevant standard of review:

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus our standard of review is very narrow . . . . To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Croyle v. Smith*, 918 A.2d 142, 146 (Pa. Super. 2007) (citation omitted).

Pennsylvania Rule of Evidence 803(2) provides that an excited utterance is not excluded by the rule against hearsay. Pa.R.E. 803(2). It

defines an "excited utterance" as "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." *Id.* This Court has stated:

> For a statement to be considered an excited utterance, it must be made spontaneously:
>
>> [A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties . . . .
>
> Additionally, when determining whether a statement is an excited utterance, the following factors must be considered: "**whether the statement was in narrative form**, the elapsed time between the startling event and the declaration, **whether the declarant had an opportunity to speak with others and whether, in fact, she did so**." There is no bright line rule as to the amount of time which has elapsed between the accident and the witness's statement, rather "[t]he crucial question, regardless of time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance."

*Croyle*, 918 A.2d at 149 (citations omitted) (emphases added).

In *Croyle*, the plaintiff and defendant were in a vehicular collision. *Id.* at 145. At trial, the parties presented competing versions of the accident. *Id.* Another driver, Dunbar, had witnessed the collision and provided testimony that supported the defendant's position. *Id.* The plaintiff

attempted to present testimony of a responding police officer, to whom Dunbar "gave a narrative statement" approximately ten minutes after the accident. *Id.* at 145, 149. This statement was allegedly different from what Dunbar said in a deposition. *Id.* at 149. The trial court did not allow Dunbar's statement to the officer into evidence. *Id.* at 145.

On appeal to this Court, the plaintiff contended that Dunbar's statement to the officer was admissible "under either the present sense impression or excited utterance exceptions to the hearsay rule." *Id.* The plaintiff argued that Dunbar "was 'upset' when making the statement[ ] as he had just seen the startling event of an accident and [the plaintiff's] injury." *Id.* at 149-50. This Court noted the plaintiff did not indicate what Dunbar said, but "only state[d] that Dunbar provided [the officer] with a narrative account of what occurred prior to the accident." *Id.* at 149. This Court opined:

> [U]pon consideration of the [excited utterance] factors, we do not find that the trial court abused its discretion in omitting Dunbar's statements. First, Dunbar had spoken to [the plaintiff and another motorcyclist] and checked to make sure [the defendant] was okay prior to making the statement. Second, Dunbar's statement was in response to a question posed by [the officer]. Third, according to [the officer's] testimony, Dunbar's statement was in a narrative form, not a single reaction to the accident. While none of these factors alone would be dispositive, we conclude that taken as a whole, Dunbar's statement to [the officer] lost "the conditions of being made 'under the stress of excitement caused by the [accident].'"

*Id.* at 150 (citations omitted).

Pursuant to the discussion in *Croyle*, we affirm the decision of the trial court to preclude Sergeant Leahy's testimony as to what Mr. Arabatlian purportedly told him. A careful review of Appellant's brief reveals that he does not articulate Mr. Arabatlian's exact statement to the sergeant. Instead, Appellant only refers to "the statement at issue," "the excited utterance which was memorialized by the officer contemporaneously when it was made," "what was 'blurted out,'" "this essential evidence." Appellant's Brief at 19, 24, 25, 26; *see also id.* at 23 (stating Mr. "Arabatlian 'blurted out' a response which has become . . . the issue of this post-trial motion [sic]"). Such abstract references contrast with the testimony of Crupi and Jordan that was allowed: Mr. Arabatlian and Ms. Arabatlian both said "no lights, no lights." *See* N.T., 4/9/13, at 73, 102-03. Thus, Appellant has not dissuaded this Court from the trial court's opinion that what he sought to introduce was not Mr. Arabatlian's exact words but instead Sergeant Leahy's narrative as to what Mr. Arabatlian said.

We note Appellant's argument "that a statement **may** be admissible even though it is made in response to a question." Appellant's Brief at 17 (emphasis added) (citing *Commonwealth v. Edwards*, 244 A.2d 683, 685 (Pa. 1968); *Commonwealth v. Stokes*, 186 A.2d 5, 7-8 (Pa. 1962)). However, as stated in *Croyle*, whether the hearsay statement is made in response to a question is but one factor to consider among several. *See Croyle*, 918 A.2d at 149. Additionally, although Appellant emphasizes that

Mr. Arabatlian was the first person to whom Sergeant Leahy spoke, Appellant ignores the trial court's observation that the converse is not true. Sergeant Leahy was not the first person to whom Mr. Arabatlian spoke; instead, he spoke first to Crupi. As stated above, Crupi was permitted to testify that Mr. Arabatlian said to him, "[N]o lights, no lights, no lights, no lights," and "Two cars passed and no lights." *See* N.T., 4/9/13, at 73.

With respect to Appellant's contention that the court denied him the opportunity to make an offer of proof and that the court could not have known what subsequent witnesses would have testified, Appellant ignores the fact that Appellee raised this issue in a pre-trial motion *in limine*. Appellant further ignores the trial court's ruling on this motion: to exclude the testimony from Sergeant Leahy but admit Crupi's and Jordan's testimony that the Arabatlians said Appellee's car did not have headlights on.

Finally, Appellant has not established he suffered prejudice as a result of the trial court's ruling. *See Croyle*, 918 A.2d at 146. As stated above, both Crupi and Jordan, who were the first people to whom Mr. and Ms. Arabatlian spoke, both testified that the Arabatlians said "no lights, no lights." *See* N.T., 4/9/13, at 73, 102-03. These statements establish what Appellant purportedly sought to show with Sergeant Leahy's testimony: that the Arabatlians exclaimed or blurted that Appellee's car did not have its headlights on. In light of all the foregoing, we do not disturb the court's ruling that the statement was not admissible under the excited utterance

exception.

Appellant's second claim on appeal is that the court erred in not admitting the statement under the present sense exception to the hearsay rule. After citing relevant legal authority, his sole argument is: (1) "there is no question that the statements which [Mr.] Arabatlian had made to Sergeant Leahy describing or explaining the events or conditions were made immediately after those events occurred;" (2) the evidence showed "that it was most unlikely that [Mr.] Arabatlian[ ] had the opportunity to form the purpose of misstating his observation." Appellant's Brief at 27.

This Court has explained,

> Pennsylvania Rule of Evidence 803(1) allows for the admission of a present sense impression where "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Pa.R.E. 803(1). "This exception permits testimony of declarations concerning conditions or events observed by the declarant regardless of whether the event was exciting." "[T]he trustworthiness of the statements depends upon the timing of the statement." "The observation must be made at the time of the event or so shortly thereafter that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation."

*Croyle*, 918 A.2d at 150 (citations omitted).

We incorporate our discussion of Appellant's excited utterance issue above, and we agree with the trial court that, with respect to his present sense impression claim, what Appellant wanted to present "was a new statement made by way of explanation to Sergeant Leahy." *See* Trial Ct.

Op. at 10. Furthermore, Appellant likewise does not establish he suffered prejudice, where Crupi and Jordan testified that Mr. and Ms. Arabatlian said "no lights, no lights." N.T., 4/9/13, at 73, 102-03.

Finding no basis for relief, we affirm the judgment entered in favor of Appellee.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/2014