J-A01003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.S.-R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.S.-R., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1668 EDA 2020 |

Appeal from the Dispositional Order Entered August 26, 2020
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-JV-0000082-2020

BEFORE:   BENDER, P.J.E., OLSON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED:  APRIL 12, 2021**

E.S.-R., a minor ("the Juvenile"), appeals from the dispositional order entered on August 26, 2020, following a delinquency adjudication for the offense of terroristic threats.[1]  The Juvenile challenges the sufficiency of the evidence to sustain his adjudication, as well as the admission of the victim's prior inconsistent statements into evidence.  After careful review, we affirm.

The juvenile court summarized the relevant facts and history of this matter in its Pa.R.A.P. 1925(a) opinion, as follows:

On July 24, 2020, at approximately 9:00 p.m., the Juvenile left his house after his stepfather, the named victim in this case, told him to stay home.  The Juvenile's stepfather followed him down the street and the Juvenile attempted to run off.  His stepfather was able to ascertain where the Juvenile had gone and waited until [he] made his way home.  On the way home[,] the Juvenile

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2706(a)(1).

noticed his stepfather behind him and called the police. He told the police that he might go on a killing spree and that there was a pedophile following him.

As this episode was unfolding, Pennsylvania State Troopers[,] Zachary Andress and Scott Wysocky[,] responded to the call initiated by the Juvenile—a call which indicated that a teenage male, with a knife, was threatening to go on a killing spree. When the troopers arrived, the Juvenile was standing at the end of the driveway to his residence, next to the street, with his arms out and a knife in his right hand. The Juvenile's stepfather was standing on the opposite end of the driveway at the bottom of the porch steps. The troopers activated their tasers and gave the Juvenile several verbal commands to drop the knife. In response, the Juvenile pulled out his cell phone and began recording the troopers, hoping he would be able to show his friends a video of him getting tased. Ultimately, after several more commands, the Juvenile laid on the ground with his arms out to the side.

Once the Juvenile was disarmed and detained, he told the officers that his stepfather had been following him and tried to grab his backpack. In response, the Juvenile pulled out a knife and threatened his stepfather. The Juvenile also related to the troopers that he had punched his stepfather in the ribs and attempted to kick him in his groin area.

The Juvenile was arrested, detained, and charged with terroristic threats, a misdemeanor of the first degree; simple assault, a misdemeanor of the second degree; and harassment, a summary offense. On July 28, 2020, a detention hearing was held. The Juvenile's stepfather participated in and testified during the hearing. At the detention hearing, the stepfather testified that the Juvenile pulled a knife on him and struck him during the course of the incident. After the hearing, the Juvenile was returned to detention pending his adjudication hearing.

The adjudication hearing was scheduled for August 7, 2020. The day before the adjudication hearing, the Juvenile's stepfather told the district attorney's office that he did not want to testify because he was concerned that the Juvenile would be taken from his home and placed in detention.

The next day, the adjudication hearing was held, as scheduled. The Juvenile's stepfather and Trooper Wysocky testified.

When the stepfather was called to testify, he claimed that the Juvenile never pulled the knife out of his backpack and[,] while the Juvenile may have swung at him, the Juvenile … did not actually hit him. The stepfather also stated that the Juvenile did not make any threats to physically harm him. The Commonwealth then asked the stepfather about his contradictory statements from the prior hearing. After admitting that he was afraid that his [step]son would get "locked away," he claimed that his previous statements were inaccurate because he was unable to hear or understand the questions that were asked during the detention hearing. At that point, the Commonwealth moved to incorporate the detention hearing testimony. Ultimately, over the Juvenile's objection, the detention hearing testimony was incorporated.

At the conclusion of the adjudication hearing, the undersigned, who also presided over the detention hearing, found that the Juvenile had committed terroristic threats. The remaining charges were dismissed. A broad summary of the reasons for the adjudication was given [on the record. *See* N.T. Hearing, 8/7/20,] at 30-33.

On August 26, 2020, we issued an order of disposition placing the Juvenile at a residential facility.

Juvenile Court Opinion ("JCO"), 10/30/20, at 1-3 (unnecessary capitalization and citations to the record omitted).

On August 27, 2020, the Juvenile filed a timely notice of appeal and subsequently complied with the court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The juvenile court filed its Rule 1925(a) opinion on October 30, 2020. The Juvenile now presents the following questions for our review:

A. Whether the juvenile court erred by denying the Juvenile's motion for judgment of acquittal for terroristic threats pursuant to 18 Pa.C.S.[] § 2706(a)(1)[,] where the Commonwealth failed to present evidence sufficient to establish beyond a reasonable doubt that the Juvenile communicated a threat or possessed the requisite intent to terrorize[?]

B. Whether the juvenile court erred as a matter of law and abused its discretion by considering testimony from a previous hearing as substantive evidence when there was no transcript for the prior hearing and the judge indicated that he does not have an eidetic memory[?]

Juvenile's Brief at 8 (unnecessary capitalization omitted).

We begin by noting that, "[t]he Juvenile Act[2] grants juvenile courts broad discretion when determining an appropriate disposition…. We will disturb a juvenile court's disposition only upon a showing of a manifest abuse of discretion." *In re C.A.G.*, 89 A.3d 704, 709 (Pa. Super. 2014) (citations omitted). Moreover, it is clear that "[i]n a juvenile proceeding, the hearing judge sits as the finder of fact." *In re L.A.*, 853 A.2d 388, 391 (Pa. Super. 2004). "The weight to be assigned the testimony of the witnesses is within the exclusive province of the fact finder." *Id.*

> When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.
>
> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

*In the Interest of J.G.*, 145 A.3d 1179, 1188 (Pa. Super. 2016) (citations omitted).

---

[2] 42 Pa.C.S. §§ 6301-6375.

In his first issue, the Juvenile challenges the sufficiency of the evidence to sustain his delinquency adjudication for terroristic threats. The Crimes Code provides, in relevant part, that "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to … commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S. § 2706(a)(1). The result threatened by the speaker need not be specifically articulated if it "may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement." *In re B.R.*, 732 A.2d 633, 636 (Pa. Super. 1999) (internal quotation marks omitted). With regard to the element of intent, "the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." *Commonwealth v. Kline*, 201 A.3d 1288, 1290 (Pa. Super. 2019) (internal quotation marks omitted). As such, "neither the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element of the crime." *Id.* (internal brackets omitted).

Instantly, the Juvenile claims that the Commonwealth failed to present evidence sufficient to establish that he had, beyond a reasonable doubt: (1) communicated, either directly or indirectly, a threat to commit any crime of violence; and/or (2) did so with the intent to terrorize another. Juvenile's Brief at 13. Regarding the first component of the crime, he asserts that the Commonwealth failed to present any evidence that he communicated a threat to his stepfather, either directly or indirectly. In support of this argument, he

solely points to self-serving, contradictory testimony, *e.g.*, his stepfather's testimony at the adjudication hearing that the Juvenile never threatened him, and his victim impact statement, in which he stated: "I am not a victim[. The Juvenile] thought there was a pedophile." ***Id.*** at 14-15 (citing N.T. Hearing at 7, 10, 13-15). The Juvenile completely ignores his stepfather's detention hearing testimony, casting the evidence in a light most favorable to himself.

Although he phrases this portion of his argument as a sufficiency claim, it instead attacks the weight of the evidence. ***See Commonwealth v. Melvin***, 103 A.3d 1, 43 (Pa. Super. 2014) ("An argument regarding the credibility of a witness's testimony goes to the weight of the evidence, not the sufficiency of the evidence."); ***Commonwealth v. Trinidad***, 96 A.3d 1031, 1038 (Pa. Super. 2014) (stating that "variances in testimony go to the credibility of the witnesses and not the sufficiency of the evidence"). We will not review a sufficiency claim where the argument in support thereof goes to the weight, not the sufficiency of the evidence. ***See Commonwealth v. Sherwood***, 982 A.2d 483, 492 (Pa. 2009) (citing ***Commonwealth v. Small***, 741 A.2d 666, 672 (Pa. 1999) (stating appellate court will not review sufficiency claim where argument in support of claim goes to weight, not sufficiency, of the evidence); ***Commonwealth v. Mack***, 850 A.2d. 690, 693 (Pa. Super. 2004) (providing no relief where appellant alleged sufficiency but argued weight; weight issue was reserved for fact-finder below)).

Even if we were to review this claim, we would note that the juvenile court explained on the record why it did not credit the stepfather's late change

of story. ***See*** N.T. Hearing at 31-32 (explaining that it is not unusual in domestic cases for the victim to change his or her story after learning what the potential consequences could be for their family member).[3] We respect the lower court's findings with regard to credibility, absent any proof that its determination was "manifestly erroneous, arbitrary and capricious[,] or flagrantly contrary to the evidence." ***Gutteridge v. J3 Energy Group, Inc.***, 165 A.3d 908, 914 (Pa. Super. 2017) (citation omitted). "The test is not whether this Court would have reached the same result on the evidence presented[] but[,] rather, after due consideration of the evidence the trial court found credible, whether the trial court could have reasonably reached its conclusion." ***Id.*** at 916. Thus, we would deem the court's finding that the Juvenile communicated a threat to his stepfather to be clearly supported by the evidence that it found credible.

As to the second prong of the offense—intent, the Juvenile argues that the Commonwealth failed to prove he possessed the requisite intent to establish terroristic threats. He suggests, rather, that his words were merely

---

[3] Moreover, the Commonwealth asserts that a direct threat was made, as the Juvenile admitted to threatening his stepfather with a knife. Commonwealth's Brief at 6-7 (citing N.T. Hearing at 20 (Trooper Wysocky's testifying that the Juvenile told him "he pulled the knife out of his pocket and threatened his stepfather")). It also argues that the Juvenile indirectly threatened his stepfather: "The record reflects that while the victim was by his porch, the [J]uvenile was on the phone with [the] police, at the end of the driveway, threatening to go on a 'killing spree' while holding a knife." ***Id.*** at 7.

statements made in the spur-of-the-moment out of anger. Juvenile's Brief at 15-16 (citing 18 Pa.C.S. § 2706(a)(1), Comment ("It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger."); *Commonwealth v. Campbell*, 625 A.2d 1215, 1218 (Pa. Super. 1993) (noting the same)).

The Juvenile purports that he

> was angered when he was being confronted by what he believed to be a pedophile while walking home at night. [He] then telephoned the police and relayed that he was being followed by a pedophile and was going to go on a killing spree. [He] was further angered when the person who was following him came up and grabbed his backpack.

*Id.* at 19. He suggests that, "[a]lthough the person who was following [him] turned out to be his stepfather, that does not negate the driving force behind [his] statements." *Id.* In conclusion, the Juvenile asserts that his words were "spur[-]of[-]the[-]moment statements made from anger resulting from a confrontation by a perceived pedophile as he was being followed in the dark walking home from a friend's house." *Id.* at 20.[4]

_____

[4] We note that the Juvenile's reliance on *Commonwealth v. Sullivan*, 409 A.2d 888 (Pa. Super. 1979), in support of his argument that he lacked the intent to make terroristic threats, and his accusation that the juvenile court ignored the precedent of this case, are of no moment, as *Sullivan* is distinguishable from the instant matter. There were two threats at issue in *Sullivan*. The first involved a 911 call by the defendant, during which he threatened to shoot a sheriff who he claimed had assaulted his father earlier that day. The second threat arose during a chance meeting between the defendant and the sheriff the following morning. The *Sullivan* Court concluded that there was insufficient evidence to sustain the defendant's convictions where the evidence showed he uttered the telephone threat in "an

The Commonwealth counters:

> While spur-of-the-moment threats which result from anger in the course of a dispute are not meant to be penalized, *being angry does not render a person incapable of forming the intent to terrorize*. [**Commonwealth v.**] **Sinnot**[, 976 A.2d 1184,] 1189 [(Pa. Super. 2009) (quoting **Commonwealth v. Walker**, 836 A.2d 999, 1001 (Pa. Super. 2003)[)]. Further, when examining spur-of-the-moment threats, this Court has also indicated that foreseeable immediate or future danger are considerations in the totality of the circumstances. **In re B.R.**, 732 A.2d [at] 638….

Commonwealth's Brief at 6 (emphasis added). It argues that the Juvenile had the intent to terrorize his stepfather and/or recklessly created the risk thereof, as he used a deadly weapon in the course of making threats to his stepfather and, by his own admission, assaulted his stepfather during the course of the incident. **Id.** at 7. The Commonwealth notes that, contrary to the Juvenile's position that he merely made spur-of-the-moment statements resulting from transitory anger,

> the testimony credited by the [lower] court shows that the [J]uvenile left the house without permission and concealed a

_____

agitated and angry state of mind[,]" and that there was no evidence to show that he had any intention of carrying out the threat. **Id.** at 889-90. As for the second threat, the Court determined it was "the emotional product of a chance meeting with the [s]heriff the following morning," which quickly became a "mouth battle" and that, again, there was no evidence of any intent to carry out the threat. **Id.** By contrast, the instant matter does not involve a "chance meeting" between the Juvenile and his stepfather. The Juvenile clearly left the residence, without permission, while concealing a knife in his backpack. Moreover, the instant matter involved more than a mere "mouth battle," as the Juvenile drew the knife on his stepfather and admitted to striking and kicking him. It is also clear that the Juvenile possessed a deadly weapon while making threats whereas, in **Sullivan**, although the defendant made a verbal threat over the phone to shoot the sheriff, we are not aware of any evidence that the defendant was ever found in possession of a weapon.

deadly weapon in his backpack for the trip. When confronted by his stepfather, he drew the weapon and threatened him. These threats of violence continued even as the 911 call was made and the [J]uvenile was still in possession of the weapon upon police arrival.

*Id.* at 7-8.

Based on the foregoing evidence presented at trial, the juvenile court found the Juvenile delinquent of terroristic threats, as explained in its Rule 1925(a) opinion:

In this case, the evidence we credited—the testimony of Trooper Wysocky about what he observed and what the Juvenile told him and the generally undisputed evidence about what the Juvenile said during his call to the police—demonstrated that the Juvenile threatened his stepfather with a knife, hit him, and attempted to kick him. He did so as part of an episode in which, among other things, he also threatened to go on a killing spree, stated without basis that he was being followed by a pedophile, and when confronted by police while still holding the knife, failed to initially comply with commands to drop it. By both words and actions, the Juvenile communicated threats to commit a crime or crimes of violence. In fact, he acted on the threats. The same statements and actions demonstrate the requisite intent to terrorize.

JCO at 6.[5] Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the juvenile court properly found sufficient evidence to support the Juvenile's adjudication.

_____

[5] While addressing the Juvenile at the adjudication hearing, the presiding judge emphasized:

[T]his wasn't just a spur-of-the-moment statement or threat of some action in the future because someone is mad about being arrested or whatever…. You had a knife. You took a knife with you. You set a whole process in motion[,] and then you actually

Next, the Juvenile claims that the lower court erred as a matter of law and abused its discretion "by considering testimony from a previous hearing as substantive evidence, when there was no transcript of the prior hearing in existence[,] and the judge indicated he does not have an eidetic memory." Juvenile's Brief at 22. Specifically, he is referring to the court's granting of the Commonwealth's motion to incorporate the stepfather's testimony from the detention hearing. *Id.* at 23.

It is well-settled that:

The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus[,] our standard of review is very narrow…. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Croyle v. Smith*, 918 A.2d 142, 146 (Pa. Super. 2007) (citation omitted).

Instantly, we note that the Juvenile's argument, as well as all of the case law on which he relies, are premised on the assertion that the court incorporated his stepfather's prior testimony from the detention hearing as

_____

pulled that knife[,] and then you still had it out when the police came.

That coupled with your statements, your actions and what not[,] is certainly enough to support the terroristic threats charge.

N.T. Hearing at 33.

*substantive* evidence. This is clearly belied by the record. Thus, the Juvenile's argument fails.

As explained by the juvenile court:

> When the request to incorporate the stepfather's detention hearing testimony was made, the Commonwealth specifically asked that the testimony be considered for purposes of impeachment.[6] While we may not have used the word "impeachment" or similar terms when ultimately granting the Commonwealth's request, our stated reasons for granting the request, our explanation of why we adjudicated the Juvenile delinquent of terroristic threats but not simple assault or harassment, and the adjudication itself, make it clear that we considered and used the stepfather's detention hearing testimony *to assess the credibility and weight of*, and to ultimately reject, the stepfather's inconsistent adjudication hearing testimony and *not as substantive evidence*. Simply, although … the stepfather's prior testimony could have been used as substantive evidence,[7] it was not.

---

[6] *See* N.T. Hearing at 8-9 (Counsel for the Commonwealth addressing the court: "I would move to incorporate the testimony of the witness from the July 28, 2020 hearing as it was sworn under oath and there was an opportunity to cross examine [him]. I believe it impeaches his testimony that was presented today.").

[7] Rule 803.1(1) governs the admissibility of prior inconsistent statements as substantive evidence. Because the record is clear that the stepfather's prior inconsistent statement was used here solely for the purpose of impeachment, it need not satisfy the requirements of Rule 803.1(1). *See* Pa.R.E. 613, Comment ("To be used for impeachment purposes, an inconsistent statement need not satisfy the requirements of Pa.R.E. 803.1(A)-(C)."). However, we acknowledge that because the stepfather's prior statement was made under oath at the detention hearing, and he was subject to cross-examination about his prior testimony at the adjudication hearing, it does appear to comply with the mandates of Rule 803.1(1). *See* Pa.R.E. 803.1(1)(A) (providing that "[a] prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and … was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding," is *not* excluded by the rule

JCO at 8-9 (unnecessary capitalization omitted; emphasis added).

Additionally, there simply is no *per se* requirement to provide a transcript of the prior statement being used to impeach the credibility of the witness. The admissibility of prior inconsistent statements for impeachment purposes is governed by Rule 613, which provides that:

> A witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness's credibility. The statement *need not be shown or its contents disclosed* to the witness at that time, but *on request*, the statement or contents must be shown or disclosed to an adverse party's attorney.

Pa.R.E. 613(a) (emphasis added).[8]

The Juvenile argues that the incorporation of the detention hearing testimony was improper because the Commonwealth failed to produce a transcript from the proceeding, nor did it point out a specific prior inconsistent statement to the witness. Juvenile's Brief at 23. Based on the plain language of Rule 613, however, the prior statement "need *not* be shown or its contents disclosed to the witness[,]" *unless requested*. **See** Pa.R.E. 613(a) (emphasis added). No request for a transcript or the specific contents of the prior statement was made by the Juvenile at the adjudication hearing.

As the record reflects, the Commonwealth asked to incorporate the stepfather's detention hearing testimony for the purpose of impeaching his

---

against hearsay "if the declarant testifies and is subject to cross-examination about the prior statement").

[8] Moreover, the credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or the Pennsylvania Rules of Evidence. Pa.R.E. 607(b).

credibility. Likewise, the juvenile court has made it clear that it incorporated the prior testimony solely for the purpose of assessing his credibility and not as substantive evidence. The court further noted:

> The stepfather testified under oath and was given an opportunity to explain the statements he made at the detention hearing and the change [in his testimony]. The stepfather acknowledged that his answers had changed[,] and he did not wish to testify against his stepson in fear that his stepson would be sent to placement for an extended period of time. The defense had a full and fair opportunity to question the stepfather at both the detention hearing and the adjudication hearing. Clearly, the requirements of Rule 613 were met.
>
> Beyond the basic requirements of the rule, the attorney who represented the Juvenile at the adjudication hearing was present at the detention hearing[,] and the undersigned presided over both proceedings. Thus, the Juvenile's attorney and the fact-finder both heard what the stepfather said during both hearings. Moreover, the two hearings were convened only 10 days apart. Therefore, although as noted during the adjudication hearing[,] the undersigned (and presumably counsel for the Juvenile) does not have an eidetic memory, the stark contrast between what the stepfather said during the detention hearing and his testimony at the adjudication hearing was obvious, fresh, and clear.

JCO at 9-10. Accordingly, we discern no abuse of discretion in the juvenile court's use of the stepfather's prior testimony.

Based on the foregoing, we affirm the dispositional order entered on August 26, 2020.

Dispositional order affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/12/21