J-A05018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WELLS FARGO BANK, N.A. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RITA A. KANANAVICIUS | |
| Appellant | No. 1258 EDA 2015 |

Appeal from the Judgment Entered April 23, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): November Term, 2009 No. 510

BEFORE:  OLSON, J., OTT, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 16, 2016**

Rita A. Kananavicius appeals from the judgment entered on April 27, 2015, in favor of Wells Fargo Bank, N.A. ("Wells Fargo") and against Kananavicius in the amount of $230,904.33.  After a thorough review of the record, the parties' briefs, and the applicable law, we affirm.

The facts and procedural history are as follows.  On November 29, 2006, Kananavicius entered into a home mortgage loan transaction with Fremont Investment and Loan ("Freemont"), wherein Kananavicius executed a promissory note and promised to repay Fremont $149,500, plus interest. That same day, as security for the loan, Kananavicius executed a mortgage on the property located at 4025 Mitchell Street, Philadelphia, Pennsylvania,

_____

[*] Former Justice specially assigned to the Superior Court.

in favor of Fremont with Mortgage Electronic Registration Systems, Inc. ("MERS"),[1] as the nominee[2] for Fremont and its successors. On February 2, 2007, the mortgage was recorded in the Philadelphia County Office of Deeds. Kananavicius also signed a notice of right to cancel and a truth-in-lending disclosure statement.[3]

Sometime thereafter, Kananavicius began to default on the loan by making insufficient payments. On August 17, 2009, EMC Mortgage Corporation ("EMC"), the servicer of the loan, sent Kananavicius a notice of

_____

[1] MERS is

> a national electronic loan registry system that permits its members to freely transfer, among themselves, the promissory notes associated with mortgages, while MERS remains the mortgagee of record in public land records as "nominee" for the note holder and its successors and assigns. MERS facilitates the secondary market for mortgages by permitting its members to transfer the beneficial interest associated with a mortgage—that is, the right to repayment pursuant to the terms of the promissory note—to one another, recording such transfers in the MERS database to notify one another and establish priority, instead of recording such transfers as mortgage assignments in local land recording offices. It was created, in part, to reduce costs associated with the transfer of notes secured by mortgages by permitting note holders to avoid recording fees.

*Montgomery Cnty. v. MERSCORP Inc.*, 795 F.3d 372, 374 (3d Cir. 2015).

[2] A "nominee" is defined as a "person designated to act in place of another, usually in a very limited way" or a "party who holds bare legal title for the benefit of" another. Black's Law Dictionary 1149 (9th ed. 2009).

[3] On July 15, 2008, Kananavicius entered into a loan modification agreement.

default pursuant to 41 P.S. § 403. Subsequently, on September 28, 2009, the mortgage and note were assigned[4] from MERS to Wells Fargo.[5]

When Kananavicius failed to cure her default, Wells Fargo initiated this foreclosure action on November 4, 2009. Originally, a default judgment was entered in favor of Wells Fargo in September of 2010. However, Kananavicius filed a motion to strike, which was granted on April 9, 2012.

On June 5, 2012, Wells Fargo filed an amended complaint. Kananavicius filed preliminary objections on June 25, 2012, for lack of capacity to sue pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(5). **See** Preliminary Objections of [Kananavicius] to [Wells Fargo]'s Amended Complaint, 6/25/2012, at 1. In her objections, she indicated there was a discrepancy as to the date the mortgage was assigned to Wells Fargo and stated:

> 7. In either event, on June 18, 2008, Fremont, the alleged assignor, filed for Chapter 11 bankruptcy.
>
> 8. Fremont had been ordered out of business in 2007 and ceased to hold assets by 2008.
>
> …

_____

[4] "An assignment is a transfer of property or some other right from one person to another, and unless in some way qualified, it extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee." **Legal Capital, LLC v. Med. Prof'l Liab. Catastrophe Loss Fund**, 750 A.2d 299, 302 (Pa. 2000) (citation omitted).

[5] On September 17, 2010, the assignment was recorded in the Office of Deeds.

9.   Furthermore, [Wells Fargo] failed to allege that it held the promissory note that it attached to the amended complaint….

10.   [Wells Fargo], therefore, was not the real party in interest in this action.

11.   Accordingly, [Wells Fargo] lacks capacity to sue, pursuant to Pennsylvania Rule of Civil Procedure 2002(a), which requires that all actions shall be prosecuted by and in the name of the real party in interest.

*Id.* at 2.

On July 20, 2012, the court entered an order, finding "there is a factual dispute as to whether [Fremont] as the originating lender in this matter had filed for bankruptcy and become nonexistent prior to the grant of authority to MERS as nominee and/or the transfer to Wells Fargo."   Order, 7/30/2012.   It also granted the parties leave to conduct additional discovery and submit supplemental memoranda.   *See id.*

On December 10, 2012, after receiving the parties' additional material, the court entered an order, overruling Kananavicius' preliminary objections and requiring her to file an answer.

On December 31, 2012, Kananavicius filed an answer and new matter. In the new matter, Kananavicius alleged the following, in pertinent part: "[Wells Fargo]'s claims are barred and/or limited because, on December 31, 2012, [Kananavicius] canceled the loan transaction pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law

("UTPCPL"), 73 P.S. § 201-7(a)." Answer and New Matter of [Kananavicius] to [Wells Fargo]'s Amended Complaint, 12/31/2012, at 3.[6]

On December 2, 2013, Wells Fargo filed a motion for summary judgment, alleging Kananavicius failed to set forth any "record-supported evidence" to rebut the allegation that she was in default on her loan payments since March 1, 2009, and that she admitted her deficiency in her response to Wells Fargo's request for admissions. Wells Fargo's Motion for Summary Judgment, 12/2/2013, at 4 and Exhibit E, Response to Request for Admissions at ¶ 1 ("It is admitted that [Kananavicius] has not made payment on the loan purportedly secured by said mortgage for a period of time."). On January 21, 2014, the court entered an order denying Wells Fargo's motion.[7]

The matter proceeded to a non-jury trial on April 24, 2014. Subsequently, on December 8, 2014, the trial court issued its verdict, which found in favor of Wells Fargo in the amount of $230,904.33. The court made the following legal and factual findings:

1. [Wells Fargo] was the real party in interest,

2. Although there was no evidence submitted at trial that the note was a copy, [Wells Fargo]'s Counsel subsequently submitted an affidavit attesting that she had possession of

---

[6]  Wells Fargo responded to the answer and new matter on January 21, 2013.

[7]  The order was timestamped on February 7, 2014.

the original note at trial and maintains possession of the original note. The note submitted at trial was signed in blank, which makes the note a Bearer note,[8] which was in the possession of [Wells Fargo] and is therefore valid and enforceable,

3. Mortgage ownership by [Wells Fargo] was demonstrated at trial,

4. Both the mortgage and note were in the possession of [Wells Fargo],

5. [Kananavicius] had no standing to object to an assignment of the mortgage or note as [Kananavicius] did not prove she will suffer any harm from the enforcement of the note and mortgage by [Wells Fargo].

6. A finding for Defendant Kananavicius would result in unjust enrichment to Defendant Kananavicius.

Order, 12/8/2014.

Kananavicius filed a post-trial motion, which was denied on April 23, 2015. Three days later, judgment was entered in favor of Wells Fargo and against Kananavicius in the amount of $230,904.33. That same day, Kananavicius filed a notice of appeal.[9]

---

[8] "A note endorsed in blank is a 'bearer note,' payable to anyone on demand regardless of who previously held the note. 13 Pa.C.S.A. §§ 3109(a), 3301." **Bank of Am., N.A. v. Gibson**, 102 A.3d 462, 466 (Pa. Super. 2014).

[9] On May 12, 2015, the trial court ordered Kananavicius to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Kananavicius filed a concise statement one day later. The trial court provided its December 8, 2014, decision in lieu of a formal Rule 1925(a) opinion.

While Kananavicius sets forth 11 issues in her "Statement of the Questions Involved,"[10] her argument is divided into four claims. Therefore, our analysis will be confined to those four arguments.

Our standard of review following a non-jury trial is well-settled:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Wyatt, Inc. v. Citizens Bank of Pennsylvania***, 976 A.2d 557, 564 (Pa. Super. 2009) (internal citations omitted).

In Kananavicius' first argument, she claims that because the contract for the sale of mortgage refinancing services was consummated at her residence, it is governed by the Section 201-7 of the UTPCPL,[11] and

---

[10] ***See*** Kananavicius' Brief at 3-4.

[11] At oral argument, Wells Fargo conceded that the UTPCPL applies to the present matter because Kananavicius signed the documents at her house.

therefore, is subject to cancellation by the consumer. Kananavicius' Brief at 11. Kananavicius contends:

> In order to provide additional protection for the consumer, an in-home contract must contain, in immediate proximity to the buyer's signature, in bold type face of a minimum size of ten points, the statement:
>
> > You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.
>
> 73 P.S. § 201-7(b)(1)(2015). Here, neither the note nor the mortgage contained the required statement. Furthermore, the note and mortgage failed to attach the "Notice of Cancellation" form required by UTPCPL, 73 P.S. § 201-7(b)(2), and referred to in the above statement. Even had Kananavicius signed and received some "Notice of Right to Cancel," no evidence was adduced that this was <u>attached</u>, 73 P.S. § 201-7(b)(2) ("attached to the contract …."), to the note and mortgage. Even had it been attached, this was <u>not</u> the notice required by UTPCPL, § 201-7(b)(2).

Kananavicius' Brief at 12-13 (reproduce record citations omitted). Moreover, she states the UTPCPL requires that the consumer also be orally notified at the time she signs the contract of her right to cancel and Wells Fargo presented no evidence that she was orally informed of such a right. *Id.* at 13. Consequently, Kananavicius states, "Because these statutory requirements were never met, [her] right to cancel continued indefinitely." *Id.* Further, she indicates she properly canceled the loan and mortgage and, therefore, "nothing remained upon which to foreclose." *Id.* at 14.

We are guided by the following:

"The UTPCPL must be liberally construed to effect the law's purpose of protecting consumers from unfair or deceptive business practices." **Id.** at 1093 (citation omitted). "In addition, the remedies of the UTPCPL are not exclusive, but are in addition to other causes of action and remedies." **Id.** (citations omitted). "The UTPCPL's 'underlying foundation is fraud prevention.'" **Weinberg v. Sun Co., Inc.**, 565 Pa. 612, 777 A.2d 442, 446 (Pa. 2001), quoting **Commonwealth v. Monumental Properties, Inc.**, 459 Pa. 450, 329 A.2d 812, 816 (Pa. 1974).

**Boehm v. Riversource Life Ins. Co.**, 117 A.3d 308, 321 (Pa. Super. 2015), *appeal denied*, 126 A.3d 1281 (Pa. 2015).

Section 201-7 of the UTPCPL provides, in pertinent part:

**(a)** Where goods or services having a sale price of twenty-five dollars ($ 25) or more are sold or contracted to be sold to a buyer, as a result of, or in connection with, a contact with or call on the buyer or resident at his residence either in person or by telephone, that consumer may avoid the contract or sale by notifying, in writing, the seller within three full business days following the day on which the contract or sale was made and by returning or holding available for return to the seller, in its original condition, any merchandise received under the contract or sale. Such notice of rescission shall be effective upon depositing the same in the United States mail or upon other service which gives the seller notice of rescission.

**(b)** At the time of the sale or contract the buyer shall be provided with:

**(1)** A fully completed receipt or copy of any contract pertaining to such sale, which is in the same language (Spanish, English, etc.) as that principally used in the oral sales presentation, and also in English, and which shows the date of the transaction and contains the name and address of the seller, and in immediate proximity to the space reserved in the contract for the signature of the buyer or on the front page of the receipt if a contract is not used and in bold face type of a minimum size of ten points, a statement in substantially the following form:

"You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right."

**(2)** A completed form in duplicate, captioned "Notice of Cancellation," which shall be attached to the contract or receipt and easily detachable, and which shall contain in ten-point bold face type the following information and statements in the same language (Spanish, English, etc.) as that used in the contract:

NOTICE OF CANCELLATION

(Enter Date of Transaction)

You may cancel this transaction, without any penalty or obligation, within three business days from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within ten business days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

If you cancel, you must make available to the seller at your residence in substantially as good condition as when received, any goods delivered to you under this contract or sale; or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within twenty days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written

notice, or send a telegram, to (name of seller), at (address of seller's place of business) not later than midnight of (date).

I hereby cancel this transaction.

(Date) Buyer's Signature

**(c)** Before furnishing copies of the "Notice of Cancellation" to the buyer, both copies shall be completed by entering the name of the seller, the address of the seller's place of business, the date of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the buyer may give notice of cancellation.

**(d)** Each buyer shall be informed at the time he signs the contract or purchases the goods or services, of his right to cancel.

**(e)** The cancellation period provided for in this section shall not begin to run until buyer has been informed of his right to cancel and has been provided with copies of the "Notice of Cancellation."

**(f)** Seller shall not misrepresent in any manner the buyer's right to cancel.

73 P.S. § 201-7.

Here, the record reveals that on November 29, 2006, Kananavicius signed numerous documents including the mortgage, a notice of right to cancel, and a truth-in-lending disclosure statement. ***See*** Wells Fargo's Plaintiff Exhibits 1, 4, and 5. The notice of the right to cancel stated, in pertinent part:

YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without

- 11 -

cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)     The date of the transaction, which is November 29, 2006

        or

(2)     The date you received your Truth in Lending disclosures;

        or

(3)     The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled.

Wells Fargo's Plaintiff Exhibit 4. The document then provided the proper procedure for a borrower/owner to cancel her mortgage. ***Id.*** Kananavicius signed and acknowledged that she received two copies of the notice on November 29, 2006. ***Id.***[12]

We note Kananavicius' argument is of a technical nature. It is apparent that while she argues the form was incomplete insofar as the document was not specifically attached to the mortgage, we find that all of the information as required by Section 201-7 was contained in the notice of right to cancel document. Moreover, Kananavicius signed the document

_____

[12] It merits mention that when counsel for Wells Fargo introduced the three documents into evidence and stated "they are part of one transaction of [a] commercial document," N.T., 4/24/2014, at 10-11, counsel for Kananavicius did not object.

along with the mortgage on the same day. One can reasonably conclude that she read the document in conjunction with the mortgage information. Furthermore, our review of the statute and case law presents no authority that even if the form was not specifically attached, a borrower was permitted to rescind the mortgage contract at any time. Kananavicius also fails to present any authority, which would allow her to do so. Accordingly, Kananavicius' purported December 31, 2012, cancellation letter, which was sent over six years after she signed the notice of right to cancel, is not binding.

Furthermore, to the extent Kananavicius contends she was not "orally" notified of her right to cancel, we find this argument too is unavailing. As stated above, Section 201-7(d) provides: "Each buyer shall be **informed** at the time he signs the contract or purchases the goods or services, of his right to cancel." 73 P.S. § 201-7(d) (emphasis added). Kananavicius again presents no authority that in addition to written notice, oral notification is required under Section 201-7(d).[13] Accordingly, Kananavicius' first argument fails.

---

[13] We note that Kananavicius cites to a 2010 federal bankruptcy district court case, *Fowler v. Rauso (In re Fowler)*, 425 B.R. 157 (Bankr. E.D. Pa. 2010), which stated in a footnote, "Presumably, the seller must orally inform the buyer(s) of the right to cancel. Irv Ackelsberg, *et. al, Pennsylvania Consumer Law* 137-138 (Carolyn L. Carter ed., George T. Bissel Co., Inc. 2d ed. 2003 & 2009 Suppl.)." *In re Fowler*, 425 B.R. at 187 n.42. It clear from our review of *In re Fowler* that the court's
*(Footnote Continued Next Page)*

In her second issue, Kananavicius sets forth an array of sub-arguments. Initially, she asserts the court erred in holding that she had no authority to object to the assignment of the mortgage and note because she did not demonstrate that she would suffer any harm from the enforcement of the documents. Kananavicius' Brief at 15. Kananavicius states, "This was erroneous, because a mortgagor does have standing to challenge the standing of a party seeking to foreclose on his or her home." **Id.** (citations omitted).[14]

Second, she contends the court erred in finding that Wells Fargo was a real party in interest to the foreclosure. **Id.** at 14. Kananavicius argues only a holder of the note can bring a foreclosure action and Wells Fargo failed to present any evidence that it owned, held, or possessed the note. **Id.** at 16-17. She states, "Although Wells Fargo presented a copy of the

_(Footnote Continued)_ ───────────────

statement was based on a presumption and is purely _dicta_. Moreover, it merits mention "this Court is not bound by the decisions of federal courts, other than the United States Supreme Court, or the decisions of other states' courts." **Eckman v. Erie Ins. Exch.**, 21 A.3d 1203, 1207 (Pa. Super. 2011). Therefore, we are not bound by **In re Fowler**.

[14] In support of this sub-issue, Kananavicius cites to **Mruk v. Mortg. Elec. Registration Sys.**, 82 A.3d 527 (R.I. 2013), **Wells Fargo Bank, NA v. Norton**, 2012 Phila. Ct. Com. Pl. LEXIS 398 (Pa. C.P. Nov. 26, 2012), and **Am. Home Mortg. Servicing, Inc. v. Tarantine**, 2011 Pa. Dist. & Cnty. Dec. LEXIS 108 (Pa. C.P. June 10, 2011). None of these decisions are binding on this Court. **See Eckman**, **supra**; **see also U.S. Bank Nat. Ass'n v. Powers**, 986 A.2d 1231, 1234 (Pa. Super. 2009) (holding this Court is not bound by decisions of the Pennsylvania courts of common pleas).

alleged note, it offered no testimony as to who, if anyone, had the original."
*Id.* at 17 (reproduced record citations omitted). She contends that even
though the court found Wells Fargo was in possession of the note, it "needed
to rely on a post-trial affidavit in which Wells Fargo's counsel claimed to
have possession of the original note." *Id.* Kananavicius states counsel for
Wells Fargo was not subject to cross-examination and that evidence may not
be introduced once the record is closed. *Id.* at 17-18. Furthermore, she
alleges, "[M]ere ownership or possession of a note, even were that
established, is insufficient to qualify an individual other than the original
lender as its holder." *Id.* at 18.

Lastly, Kananavicius states the original owner of the note was Fremont
and Wells Fargo failed to demonstrate that possession of the note had been
transferred to Fremont's successors. *Id.* at 19. Kananavicius argues Wells
Fargo could not foreclose on the property at issue because it lacked a chain
of assignment of the mortgage. *Id.* She points to the following: (1) the
rights to the mortgage followed the note and when Fremont assigned the
loan on April 5, 2007, it no longer possessed rights to the mortgage; (2)
Fremont filed for bankruptcy in June of 2008 and therefore, could not assign
anything; (3) while MERS may have been authorized to act as a nominee for
Fremont and its successors, no evidence was offered to show that these
successors were MERS members; and (4) the assignment was unauthorized.
*Id.* at 21-26.

We begin with the following. Pennsylvania permits assignment[15] of mortgages and, in order to be effective as against third parties, written assignments must be recorded in accordance with 21 Pa.C.S. § 621 *et seq*. Upon occurrence of a default, the owner of a note and mortgage can proceed with an action for damages on the note, a foreclosure action on the mortgage, or both (albeit not in the same complaint under Pa.R.C.P. 1146). *See Bank of Pennsylvania v. G/N Enterprises, Inc.*, 463 A.2d 4, 6 (Pa. Super. 1983). Mortgage foreclosure actions are governed by Pa.R.C.P. 1141-1150, and 3180-3183. Moreover, "all [civil] actions shall be prosecuted by and in the name of the real party in interest." Pa.R.C.P. 2002(a).[16]

> In a mortgage foreclosure action, the mortgagee is the real party in interest. *See Wells Fargo Bank, N.A. v. Lupori*, 2010 PA Super 205, 8 A.3d 919, 922 n.3 (Pa. Super. 2010). This is made evident under our Pennsylvania Rules of Civil Procedure governing actions in mortgage foreclosure that require a plaintiff in a mortgage foreclosure action specifically to name the parties to the mortgage and the fact of any assignments. Pa.R.C.P. 1147. A person foreclosing on a mortgage, however, also must own or hold the note. This is so because a mortgage is only the security instrument that ensures repayment of the indebtedness

---

[15] "Where an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his rights." *CitiMortgage, Inc. v. Barbezat*, 131 A.3d 65, 69 (Pa. Super. 2016) (citation omitted).

[16] "[A] real party in interest is a [p]erson who will be entitled to benefits of an action if successful.... [A] party is a real party in interest if it has the legal right under the applicable substantive law to enforce the claim in question." *US Bank N.A. v. Mallory*, 982 A.2d 986, 993-994 (Pa. Super. 2009) (citation and quotation marks omitted).

under a note to real property. ***See Carpenter v. Longan***, 83 U.S. 271, 275, 21 L. Ed. 313 (1872) (noting "all authorities agree the debt is the principal thing and the mortgage an accessory."). A mortgage can have no separate existence. ***Id.***

On the other hand, a person may choose to proceed in an action only upon a note and forego an action in foreclosure upon the collateral pledged to secure repayment of the note. ***See Harper v. Lukens***, 271 Pa. 144, 112 A. 636, 637 (1921) (noting "as suit is expressly based upon the note, it was not necessary to prove the agreement as to the collateral."). For our instant purposes, this is all to say that to establish standing in this foreclosure action, [the appellee-bank] had to plead ownership of the mortgage under Rule 1147, and have the right to make demand upon the note secured by the mortgage.[FN 1]

> [FN 1] The rules relating to mortgage foreclosure actions do not expressly require that the existence of the note and its holder be pled in the action. Nonetheless, a mortgagee must hold the note secured by a mortgage to foreclose upon a property. "The note and mortgage are inseparable; the former as essential, the latter as an incident." ***Longan***, 83 U.S. at 274.

***CitiMortgage, Inc.***, 131 A.3d at 68.

Turning to the present matter, Wells Fargo demonstrated at trial that it had standing with respect to both the mortgage and note. With respect to the mortgage, Wells Fargo offered into evidence documentation of the mortgage and proof that it was the holder of the mortgage "by assignment" from Fremont *via* MERS, which was duly recorded in the office of the records for Philadelphia County on September 17, 2010. ***See*** Wells Fargo's Trial

Exhibits 1 (Mortgage) and 2 (Assignment of Mortgage).[17] Therefore, upon assignment of the mortgage by MERS to Wells Fargo, Wells Fargo became the legal owner of the mortgage and had the right to institute foreclosure proceedings against Kananavicius for failure to make timely payments.

Furthermore, Wells Fargo also presented the adjustable rate note at trial. *See* Wells Fargo's Trial Exhibit 3 (Adjustable Rate Note). This Court has previously determined that a promissory note accompanied by a mortgage is a negotiable instrument governed by Pennsylvania's Uniform Commercial Code ("UCC").[18] *JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1265 (Pa. Super. 2013). Pursuant to the UCC, a "[p]erson entitled to enforce" an instrument means "the holder of the instrument." 13 Pa.C.S. § 3301(1). A "holder" is "the person in possession of a negotiable instrument that is payable either to the bearer or to an identified person that is the person in possession." 13 Pa.C.S. § 1201(b)(21)(i). A "bearer" is defined as "[a] person in control of a negotiable electronic document of title or a person in possession of a negotiable instrument, negotiable tangible document of title or certificated security, that is payable to bearer or indorsed in blank." 13 Pa.C.S § 1201(b)(5). The UCC also provides, "[i]f an [i]ndorsement is made by the holder of the instrument and it is not a special

---

[17] Counsel for Kananavicius did not object to the admission of Exhibits 1 and 2. *See* N.T., 4/24/2014, at 13.

[18] 13 Pa.C.S. §§ 1101-9809.

indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." 13 Pa.C.S. § 3205(b). Moreover,

[a] note is payable to bearer if it

(1) states that it is payable to bearer or to the order of bearer or otherwise indicates that the person in possession of the promise or order is entitled to payment;

(2) does not state a payee; or

(3) states that it is payable to or to the order of cash or otherwise indicates that it is not payable to an identified person.

13 Pa.C.S. § 3109(a). Further reinforcing the right of a possessor of a note to enforce it, at least one court has held that one need not be a "holder" as defined by the UCC to enforce a note in its possession, notwithstanding doubts regarding how it came to be transferred to the possessor. *See Bank of N.Y. v. Raftogianis*, 418 N.J. Super. 323, 13 A.3d 435 (N.J. Super. Ct. 2010).

*JP Morgan Chase Bank, N.A.*, 63 A.3d at 1266.

Here, Wells Fargo is the current holder of the original note, which neither party disputes was indorsed "in blank," without recourse. *See* Plaintiff's Trial Exhibit 3 (Adjustable Rate Note).[19] This means the note did

---

[19] Counsel for Kananavicius only objected to Exhibit 3 as to its authentication, not to whether it was the original note or that the note was indorsed in blank. *See* N.T., 4/24/2014, at 13. Therefore, any claims she now raises that Wells Fargo improperly presented a copy of the note or incorrectly admitted the note *via* a post-trial affidavit are waived for failure to make to make a timely objection before the trial court. *See* Pa. R.A.P.
*(Footnote Continued Next Page)*

not specify the person to whom the instrument is payable, and instead is payable to the person or entity in possession of the note. As such, the note meets the requirements of a negotiable instrument under the UCC, and Wells Fargo is in present possession of the original bearer instrument that was executed by Kananavicius.

Nevertheless, our discussion does not end there. It merits mention that this Court recently stated:

> [A] note secured by a mortgage is a negotiable instrument, as that term is defined by the PUCC, and stated that "[p]ursuant to the PUCC, a debtor who satisfies his obligations under a negotiable instrument cannot be required to do so again, even if the recipient of the debtor's performance is not the holder of the note in question." [**J.P. Morgan Chase, N.A.**, 63 A.3d] at 1263, 1265 (citing 13 Pa.C.S. § 3602(a)). We further reasoned that under the PUCC, a borrower is not in peril of double liability or injury by an allegedly defective assignment, for if the assignment to the foreclosing party had been defective, the borrower would not have to pay on the note to another party. Thus, **we found a borrower lacks standing to challenge the validity of the assignment**. *Id.* at 1266; *see also In re Walker*, 466 B.R. 271, 285-286 (Bankr.E.D.Pa. 2012) (stating "If a borrower cannot demonstrate potential injury from the enforcement of the note and mortgage by a party acting under a defective assignment, the borrower lacks standing to raise the issue") (citation omitted).
>
> …
>
> [The **J.P. Morgan Chase, N.A.**] Court stressed therein that "the chain of possession by which [a party] c[o]me[s] to hold the [n]ote [is] immaterial to its enforceability by [the party]." *Id.*, 63 A.3d at 1266. [A party], as the holder of the Note, a

*(Footnote Continued)* ―――――――――――

302(a) (issues not raised in the lower court cannot be raised for the first time on appeal).

- 20 -

negotiable instrument the authenticity of which is not challenged herein, is entitled to make demand upon and to enforce [the opposing party's] obligations thereunder.

***Gerber v. Piergrossi***, __ A.3d __, 2016 PA Super 130, *19-20 [1533 EDA 2015] (Pa. Super. June 17, 2016) (emphasis added).

Therefore, in accordance with ***J.P. Morgan Chase, N.A.*** and ***Gerber***, and contrary to Kananavicius' arguments, we conclude the court was correct in determining Kananavicius, sitting as the borrower, lacked standing to object to the validity of the assignments. The chain of possession is immaterial to Wells Fargo's ability to enforce the loan because it is the present holder of the note.[20] Accordingly, Kananavicius' second argument fails.

Next, Kananavicius asserts the trial court improperly admitted certain evidence. ***See*** Kananavicius' Brief at 26. We note the relevant standard of review:

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus[,] our standard of review is very narrow . . . . To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

---

[20] Even if the assignment to Wells Fargo was defective and Fremont or its other successors retained ownership rights in the note, any payments Kananavicius makes to Wells Fargo would discharge her liability under the note. ***See*** 13 Pa.C.S. § 3602(a). Indeed, she would not be in danger of being exposed to double liability.

*Croyle v. Smith*, 918 A.2d 142, 146 (Pa. Super. 2007) (citation omitted).

First, Kananavicius complains the court abused its discretion by admitting the note, the notice of right to cancel, the truth-in-lending disclosure statement, and the loan modification over her objection because the documents had not been properly authenticated. Kananavicius' Brief at 26. Specifically, she states, "No provision of Pennsylvania commercial law, however, allows a negotiable instrument to be self-authenticating as commercial paper." *Id.* at 26-27 (citation omitted).

> "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Tangible evidence is authenticated properly by the establishment, through direct or circumstantial evidence, of a reasonable inference that the identity and condition of the item remained unimpaired until it was presented at trial. *See Commonwealth v. Judge*, 437 Pa. Super. 51, 648 A.2d 1222, 1224 (Pa. Super. 1994).

*Koller Concrete, Inc. v. Tube City IMS, LLC*, 115 A.3d 312, 316 (Pa. Super. 2015). Moreover, the Pennsylvania Rules of Evidence also state that certain documents are self-authenticating, including commercial paper and related documents. *See* Pa.R.E. 902(9)("The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted: … Commercial paper, a signature on it, and related documents, to the extent allowed by general commercial law."). Additionally, the comment to Rule 902 states: "Pa.R.E. 902(9) is identical to F.R.E. 902(9). Pennsylvania law treats various kinds of commercial paper

and documents as self-authenticating. *See, e.g.*, 13 Pa.C.S. § 3505 (evidence of dishonor of negotiable instruments)." Pa.R.E. 902 cmt.

While no provision of Rule 902 explicitly indicates a negotiable instrument is considered to be self-authenticating as commercial paper, general commercial law does. ***See*** 13 Pa.C.S. § 3308(a) ("**(a)** ***Proof of signatures. —*** In an action with respect to an instrument, **the authenticity of**, **and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings**. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature. If an action to enforce the instrument is brought against a person as the undisclosed principal of a person who signed the instrument as a party to the instrument, the plaintiff has the burden of establishing that the defendant is liable on the instrument as a represented person under section 3402(a) (relating to signature by representative).") (emphasis added).[21] Here, a review of the record reveals

---

[21] ***PHH Mortg. Corp. 2001 Bishop's Gate Blvd. v. Powell***, 100 A.3d 611 (Pa. Super. 2014) (affirmed finding for appellee-mortgage company in a foreclosure action because appellant-homeowners, who denied signing the note, did not offer any evidence to rebut the statutory presumption of validity of signatures).

that Kananavicius did not challenge the authenticity of the signatures on the documents. Accordingly, we conclude the trial court properly admitted the note as a self-authenticating document and the remaining contested exhibits as "related" documents pursuant to Rule 902(9).

Furthermore, Kananavicius asserts the court improperly admitted Plaintiff Exhibits 6, 7, and 9 (the July 11, 2008 modification agreement, the EMC Mortgage Corporation payment loan history, and the April 22, 2014, payoff statement, respectively) because they were not produced in discovery and were hearsay. Kananavicius' Brief at 27. Other than a bald assertion, Kananavicius does not explain how the failure to produce in discovery prejudiced her and constituted reversible error. *Croyle*, 918 A.2d at 146. Therefore, this argument is meritless.

Kananavicius also contends the court erred in allowing Frank Dean, a home loan research officer of Morgan Chase Bank ("Chase"),[22] to testify because he had not been disclosed as a witness.[23] Kananavicius' Brief at 27.

---

[22] As will be discussed below, Chase was the subsequent servicer to Kananavicius' loan after EMC.

[23] In a related matter, Kananavicius mentions Dean was permitted to testify about Plaintiff Exhibit 8 (the notice of default). Kananavicius' Brief at 27. However, in her argument, she fails to list the exhibit with the other documents she claims were not produced in discovery. *Id.* Moreover, her counsel did not object to Plaintiff Exhibit 8 being at trial. *See* N.T., 4/24/2014, at 30. Assuming *arguendo* counsel did object, we find Kananavicius does not explain how the failure to produce this exhibit in

*(Footnote Continued Next Page)*

Again, Kananavicius fails to demonstrate how the alleged lack of disclosure prejudiced her or constituted reversible error. **See Croyle**, 918 A.2d at 146.[24]

Additionally, Kananavicius claims the court erred in allowing Dean to authenticate business record documents, Plaintiff Exhibits 7, 8, and 9, because of Dean's untrustworthiness. Kananavicius' Brief at 27. She states:

> To take advantage of the hearsay exception for records of a regularly conducted activity, Pennsylvania Rule of Evidence 803(6) requires the proponent of documentary evidence to establish circumstantial trustworthiness. **E.g.**, **Cmwlth. Fin. Sys., Inc. v. Smith**, 15 A.3d 492, 499 (Pa. Super. 2011) (Shogan, J.) (citing Pa.R.E. 803(6)). Mere acceptance or incorporation into an assignee's business records is not enough to satisfy the trustworthiness requirements of Rule 803(6). **See id.** at 499-500 ("Regardless of a 'nationwide trend' and 'clear federal precedent' for allowing the introduction of business records consisting of documents generated by third parties, the Pennsylvania Supreme Court has not seen fit to adopt the rules of incorporation.").
>
> Dean testified that he was, since 2011, "Home Loan Research Officer" for servicer Chase, and until 2011, was a Chase Bank branch manager in Lancaster, Ohio. Dean testified that, in this capacity, he had, only within the last month, reviewed the documents to which he was to testify. The servicing of Kananavicius'[] alleged loan was not assigned by

_(Footnote Continued)_ _____

discovery prejudiced her and constituted reversible error. **Croyle**, 918 A.2d at 146.

[24] Furthermore, contrary to Kananavicius' allegation, Dean was disclosed as a witness. At trial, counsel for Wells Fargo explained: "My understanding was when Mr. Gush was here prior to the previously scheduled court date, he had said that he was bringing a witness and that he had disclosed it as Mr. Dean from JP Morgan Chase, the servicer of the loan." N.T., 4/24/2014, at 19.

> EMC to Chase until April 1, 2011. Dean admitted that he never worked for EMC. Therefore, Dean was not qualified to attest to any purported records of EMC or any event prior to, at the earliest, April 1, 2011. Dean's testimony should have been stricken, together with his exhibits.

*Id.* at 27-28 (reproduced record citations omitted).

Pennsylvania Rule of Evidence 802 provides: "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). The Pennsylvania Rules of Evidence provide that certain statements are not excluded under the hearsay rule, even when the declarant is not present. Pertinent to this appeal is the "business record exception," which permits the admission of a recorded act, event or condition if certain requirements are met. *See* Pa.R.E. 803(6).

> Furthermore, the Uniform Business Records as Evidence Act states:
>
> > A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.
>
> 42 Pa.C.S.A. § 6108(b). "As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company, a

sufficient basis is provided to offset the hearsay character of the evidence." **Boyle v. Steiman**, 429 Pa. Super. 1, 631 A.2d 1025, 1032-33 (Pa. Super. 1993) (internal citations omitted), *appeal denied*, 538 Pa. 663, 649 A.2d 666 (Pa. 1994).

**U.S. Bank, N.A. v. Pautenis**, 118 A.3d 386, 401 (Pa. Super. 2015).  **See also Keystone Dedicated Logistics, Inc. v. JGB Enters.**, 77 A.3d 1, 13 (Pa. Super. 2013) (indicating a qualified business records witness need not have personal knowledge as long as he or she has sufficient information relating to the preparation and maintenance of the records).

Turning to the present matter, Dean stated he was a loan research officer for Chase and Chase was the present servicer for the loan at issue. N.T., 4/24/2014, at 20-21.  Dean explained what a servicer does, the records pertaining to a loan, and how it keeps track of when a loan goes into default.  **Id.** at 21.  He indicated EMC was the previous servicer of the loan, prior to Chase's acquisition of the company in 2008, and that both corporations kept similar record keeping practices.  **Id.** at 22-23.  Moreover, Dean testified EMC's records were kept in the ordinary course of regularly conducted activity after the acquisition.  **Id.** at 24-25.  In reviewing Dean's testimony, we decline to disturb the trial court's assessment that he was a qualified witness for purposes of authenticating the documents.[25]

_____

[25]  As indicated above, Kananavicius cited **Commonwealth Financial Systems v. Smith**, 15 A.3d 492 (Pa. Super. 2011), wherein a panel from this Court refused "to adopt the federal 'rule of incorporation[,]' which provides that the record a business takes custody of is 'made' by the
*(Footnote Continued Next Page)*

- 27 -

Accordingly, Kananavicius' evidentiary arguments fail and the trial court did not abuse its discretion in admitting the evidence in question.

In Kananavicius' fourth issue, she claims the trial court erroneously determined that a finding for her would result in unjust enrichment in her favor because such a determination was not supported by the record or law. Kananavicius' Brief at 28-29.

> Unjust enrichment is a quasi-contractual doctrine based in equity; its elements include benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. When considering the validity of a claim for unjust enrichment, we must focus on whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.

*Wiernik v. PHH U.S. Mortg. Corp.*, 736 A.2d 616, 622 (Pa. Super. 1999) (citations and quotation marks omitted), *appeal denied*, 751 A.2d 193 (Pa. 2000).

Kananavicius specifically complains:

*(Footnote Continued)* ──────────────

[acquiring] business" for purposes of the business records exception to the hearsay rule. *Commonwealth Financial Systems*, 15 A.3d at 496 and 500.

However, *Commonwealth Financial Systems* is distinguishable from the present matter because it was fact-specific. In that case, the court determined the witness was not qualified to authenticate the records of another company based on his testimony. Here, the court determined Dean did possess sufficient knowledge of the records and could establish the documents' trustworthiness. Accordingly, *Commonwealth Financial Systems* does not apply to this case.

Now, Pennsylvania Rules of Civil Procedure 1141-1150 govern actions for mortgage foreclosure, *e.g.*, **Rearick v. Elderton State Bank**, 97 A.3d 374, 383 (Pa. Super. 2014). Rule 1141(a) provides that an action at law to foreclose a mortgage upon any estate, leasehold or interest in land shall **not** include an action to enforce a personal liability, *e.g.*, *id.*, such as restitution for unjust enrichment. It is well-established that an action in mortgage foreclosure is strictly *in rem* and thus may **not** include an *in personam* action to enforce a personal liability. *E.g.*, *id.* These procedural requirements must be strictly followed. *E.g.*, **Forest Highlands Cmty. Ass'n v. Hammer**, 903 A.2d 1236, 1240 (Pa. Super. 2006) (citing **First Fed. Sav. & Loan Ass'n of Greene County v. Porter**, 183 A.2d 318 (Pa. 1962)). Therefore, a personal liability for unjust enrichment, even if there would be evidence to support it, cannot be grounds for a judgment in mortgage foreclosure.

Kananavicius' Brief at 29-30 (emphasis in original).

While Kananavicius may be correct that the doctrine of unjust enrichment is inapplicable when the relationship between parties is based on a written agreement,[26] it is clear from Wells Fargo's June 5, 2012, amended complaint that it never brought a personal liability claim against Kananavicius. The basis for the suit was only a foreclosure cause of action. Therefore, the issue before the trial was not unjust enrichment but rather, whether Wells Fargo was the real party in interest and was entitled to enforce the mortgage and note agreements. Further, one can reasonably infer that the court's statement regarding the doctrine was merely a notation

---

[26] **See Rearick**, 97 A.3d at 383 ("[I]n Pennsylvania, the scope of a foreclosure action is limited to the subject of the foreclosure, *i.e.*, disposition of property subject to any affirmative defenses to foreclosure or counterclaims arising from the execution of the instrument(s) memorializing the debt and the security interest in the mortgaged property.").

that any other ruling (that was not in favor of Wells Fargo) would be inequitable. Accordingly, Kananavicius' final argument is unavailing.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2016