J-A05003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MAURICE KING | : | |
| | : | |
| Appellant | : | No. 608 WDA 2024 |

Appeal from the Judgment of Sentence Entered November 13, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0002251-2020

BEFORE:  MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                     **FILED: March 21, 2025**

Maurice King (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of one count each of first-degree murder, aggravated assault, firearms not to be carried without a license, recklessly endangering another person, and tampering with or fabricating physical evidence.[1]  Appellant raises a sole challenge to the admissibility of certain evidence introduced at trial, over his hearsay objection.  We affirm.

The trial court detailed the factual history and evidence presented at trial as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 2702(a)(1), 6106(a)(1), 2705, 4910(1).

[A] shooting [] occurred in the Northside section of Pittsburgh on December 18, 2019. This shooting caused the death of Cedrick Mack [(Mack or the victim)] and injury to Ashley Strong [(Strong)]. …. Around 1:00 p.m. on December 18, 2019, Mack … texted [Strong] and [] asked for a ride. [N.T. (jury trial), 9/6-11/23,] at 49. [Mack] informed [Strong] he was going to the Northside to meet with a friend, and Strong picked [Mack] up about fifteen (15) minutes later. Mack directed [Strong] to drive to 2125 Shelton Avenue [in Pittsburgh]. …. While seated in the front passenger seat, Mack was engaged in a phone conversation while on speakerphone. Consequently, Strong could hear [Mack] speaking to a male[,] and [Strong stated] that the [male's] name was "Reese[."] *Id.* at 51-53. [Strong and Mack] arrived at 2125 Shelton Avenue…. *Id.* Thereafter, Mack began arguing with the male on the phone because no one was there to meet [Mack]. *Id.* at 52.

Strong then began driving around the area and while at a stop sign on Mayfield Street, Mack indicated he saw the person he was looking for. Strong observed a dark figure walking up a hill[, and stated Mack then] exited the front passenger door of her vehicle. [Strong] remained in the car. *Id.* at 54, 64. Mack then partially reentered [Strong's] vehicle and told [Strong] to "get down[,"] while pulling her body down towards the passenger side floorboard. *Id.* at 55-56, 78. [Strong] looked up to see a male[, whom Strong was unable to subsequently identify,] standing at the open passenger door with a gun and witnessed him shoot Mack in the back of the head. *Id.* Forensic pathologist Dr. Willis Ashton Ennis testified that Mack suffered five (5) gunshot wounds…. *Id.* at 362-74.

Strong exited the car in an effort to escape and get help. She observed the shooter, who she described as a male wearing dark clothing. *Id.* at 56, 79. Strong was also shot during this incident and suffered a perforating gunshot wound to her right wrist and a bullet graze to her left shoulder. *Id.* at 57-58.

Trial Court Opinion, 9/12/24, at 3-5 (some punctuation and citations modified).

The trial court explained the subsequent police investigation into the shooting as follows:

Police investigated the path [that] the shooter [took away from the crime scene] by following footprints left in the snow. Tracking these footprints, … police collected residential surveillance footage along this path. [N.T., 9/6-11/23,] at 163-64, 185-88; Commonwealth Exhibits 114, 115.

\* \* \*

The footprints eventually led [police] to Steelworkers Tower (hereinafter Tower), a housing complex on Perryville Avenue located about a quarter mile from the crime scene. *Id.* at 184-85, 210-15. Laura Tomlinson [(Tomlinson)], who worked as the Community Manager at the [Tower] complex, testified regarding the sign-in policy for visitors upon entering the building. *Id.* at 104-05. Police obtained a copy of the December 18, 2019 sign-in sheet, which showed that "Reese" signed in at 10:42 a.m. as a visitor of Apartment 206. *Id.* at 216-17, 223; Commonwealth Exhibit 8. The parties stipulated that the resident of this apartment was Debra Riley, the grandmother of Appellant. *Id.* 246-47. [Video f]ootage from the Tower's interior and exterior cameras was also obtained by police. *Id.* at 105. This footage evidenced that at 2:40 p.m., an exterior camera captured a duffle bag or bags [being] dropped out of a window at the rear of the [Tower] building. *Id.* at 219; Commonwealth Exhibit 115. Within seconds, a person exited the emergency door [located at the rear of the Tower,] retrieved the bags, and walked towards Ellis Street. *Id.* At 3:02 p.m., a black male wearing black pants with a white stripe down the side, along with a light gray t-shirt and a denim-type jacket, entered the Tower lobby carrying a bookbag and some clothing. *Id.* at 188. The male, appearing to have blood on his face, signed the sign-in sheet. *Id.* 192, 216.

Using the elevator, the male exit[ed] onto the second floor and walk[ed] down the hallway. [The male was] still holding a backpack in one hand and clothing and shoes in the other. …. The male then turn[ed] a corner and enter[ed] a room that houses [the Tower's] trash chute, which empties into a dumpster located on the first floor. *Id.* at 195-196. When [the male] reappear[ed] from this room at approximately 3:07 p.m., he no longer ha[d] the clothing or the backpack. *Id.* at 193-95. Tomlinson led police to the dumpster, where they retrieved a black backpack, black hoodie, black jeans, and black shoes that were laying directly on top of other trash. *Id.* at 196, 198-99; Commonwealth Exhibits

124, 127-28. The male then [left] the Tower around 4:00 p.m. ***Id.*** at 200-02; Commonwealth Exhibit 115.

Jeremy Hawkins [(Hawkins)], who works for ride share companies Uber and Lyft, testified that around 3:45 p.m. on December 18, 2019, he answered a request for a ride from [the] Tower. From there, [Hawkins] picked up [Appellant,] who [Hawkins] observed to have scratches on his nose. ***Id.*** at 236-37.

Trial Court Opinion, 9/12/24, at 7-9 (some punctuation and citations modified). Hawkins testified that he transported Appellant to his residence, located in Pitcairn. N.T., 9/6-11/23, at 240.

The trial court further explained that

[o]n December 26, 2019, eight (8) days after Mack's death, [police] … arrested [Appellant pursuant to a warrant,] and a [cellular] phone was recovered during a search of [Appellant's] person. [N.T., 9/6-11/23,] at 230. Mack's phone records detailed calls and text messages [(Mack's text messages) that Mack placed] on December 18, 2019, [and sent to a] phone number … later identified as [being associated with] the same phone recovered from Appellant's person when he was arrested. ***Id.*** at 225, 230, 378-80; Commonwealth Exhibits 119, 120, 282, 283, 287. The phone records showed that text messages were exchanged [between Mack and Appellant,] starting at 9:45 a.m. [on December 18, 2019], and ending at 11:11 a.m. that same day.[2] [**In the text**] **messages, …** [**Mack and Appellant**] **spoke of meeting up at a later time** [**that day**].[3] Then, at 2:42 p.m.,

_____

[2] We collectively hereinafter refer to the text message communications between Mack and Appellant on December 18, 2019, as "the text messages."

[3] The trial court detailed the complete content of the text messages in its opinion as follows:

Mack: Yo. What type of time you on.

Appellant: Soon I get some wheels I gotta slide on you.

*(Footnote Continued Next Page)*

_____

> Mack: I'm slid on you.
>
> Appellant: Me and lay lay arguein [*sic*] right now so I'm back n forth from north & east right nw [*sic.*]
>
> Mack: Where you at now.
>
> Mack: And what's up with what I gave you.
>
> Appellant: On da north n it's goin N-T [*sic*] -- as fast as I would hope. Bt it's goin [*sic*].
>
> Mack: How much you got.
>
> Appellant: 210
>
> Mack: Where the rest.  So you still got some.
>
> Appellant: Yea like 2.
>
> Mack: Ite [*sic*] so how long till you can get me that right there.  Are I'll [*sic*] come to you.
>
> Appellant: Shelton 2125.  On da north.  Or I could probably get a ride tonight when my mans get off.
>
> Mack: I'll call so you can tell me where to come.

Trial Court Opinion, 9/12/24, at 15-16 (quoting, with some modifications by the trial court, N.T., 9/6-11/23, at 385-89); ***see also id.*** at 15 ("Collectively, the [text] messages were a conversation between Mack and Appellant wherein Mack asked about picking something up from Appellant and about meeting up later [that day] to do so.").

At trial, Appellant acknowledged the authenticity of the text messages, and conceded that his own texts (as opposed to Mack's text messages) implicated Appellant's own "statement[s] and his interests" and were admissible.  N.T., 9/6-11/23, at 381, 395; Pa.R.E. 901.  Appellant objected to admission of Mack's text messages on hearsay grounds.  ***See*** N.T., 9/6-11/23, at 381, 395-97.

a call [took] place between Appellant and Mack that last[ed] nearly fourteen (14) minutes. *Id.* at 431. Cellular site data [that police obtained during the investigation] established that Appellant's phone was in the area of [a cellular] tower [that was affixed to the top of the Tower,] between the hours of 9:45 a.m. and 1:39 p.m. *Id.* at 457-58. Then, starting at 2:42 p.m., and during the fourteen-minute call with Mack, Appellant['s cell phone] was [located] just north of the Tower, which is consistent with the area of the shooting. *Id.* at 459.

Trial Court Opinion, 9/12/24, at 11 (footnotes and emphasis added; some citations modified).

Following Appellant's arrest, the Commonwealth charged him with the above-mentioned offenses, as well as persons not to possess firearms.[4] The matter proceeded to a jury trial on September 6, 2023. With respect to Appellant's objection at trial to the admissibility of Mack's text messages, the trial court explained in its opinion:

At trial, the Commonwealth called Detective David O'Neil to testify to [the] text message[s] chain between [Mack] and [Appellant]. The [text] messages were part of a phone extraction report identified as Commonwealth Exhibit 287. [N.T., 9/6-11/23,] at 379-80. Appellant stipulated to the authenticity of the report, but made a timely objection that [Mack's text messages] were inadmissible hearsay[. T]he Commonwealth argued [Mack's text messages] were admissible under [the hearsay exception set forth at] Pa.R.E. 803(1) — Present Sense Impression. *Id.* at 380-81[; *see also id.* at 381 (Appellant countering Mack's text messages did not constitute a present sense impression).] Outside the presence of the jury, the [trial c]ourt conducted an evidentiary hearing [regarding the admissibility of Mack's text messages].

---

[4] 18 Pa.C.S.A. § 6105(a)(1). The Commonwealth withdrew this charge during trial.

- 6 -

Trial Court Opinion, 9/12/24, at 14-15 (some citations, punctuation, and formatting modified).

After considering argument from the parties, the trial court ruled Mack's text messages were admissible and stated as follows:

> After looking at … the text of [Mack's text messages] …, [the court] believes that this [evidence] is admissible for several reasons. One, [the evidence] speaks to the contact that occurred between [Mack and Appellant]. And I'm happy to give an instruction to this effect, but I [] believe that … [Mack's text messages] … can be admissible … to show … the fact that [Mack and Appellant] were communicating on December 18, 2019, and speaking to the idea of, at some point, meeting. But even if [Mack's text messages constitute] hearsay, I do believe that under these circumstances[, the evidence] would qualify as a present sense impression.

N.T., 9/6-11/23, at 397-98; *see also id.* at 398-99 (trial court stating that when Mack sent Mack's text messages, he was "giving a real[-]time description as to what he's doing and what [Mack and Appellant were] attempting to do in terms of communication."). The trial court further stated that it did not "necessarily believe [that] the truth of the statements [in Mack's text messages] is what makes this [evidence] relevant. It is the fact that [Mack and Appellant were] communicating … in close proximity to when the alleged incident … occurred." *Id.* at 398.

At the close of trial, the jury found Appellant guilty of all charges. On November 13, 2023, the trial court imposed an aggregate sentence of life in prison plus 6 to 12 years.

On November 24, 2023, Appellant timely filed post-sentence motions, which the trial court subsequently denied. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents a single issue for our review:

Whether the text messages between the victim and Appellant were hearsay statements used to prove the truth of the matter asserted and did not fall under the present sense impression exception to the rule against hearsay?

Appellant's Brief at 5.

We are mindful of our standard of review:

When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

*Commonwealth v. Jackson*, 283 A.3d 814, 817 (Pa. Super. 2022) (citation omitted); *see also Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013) (stating the "standard of review for a trial court's evidentiary rulings is narrow" (citation omitted)). An "[a]buse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Williams*, 241 A.3d 1094, 1101 (Pa. Super. 2020) (citation omitted).

"Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of

Evidence." ***Commonwealth v. Rivera***, 238 A.3d 482, 492 (Pa. 2020); ***see also*** Pa.R.E. 802 (rule against hearsay). "Hearsay is a statement the declarant does not make while testifying at the current trial or hearing [and] is offered in evidence to prove the truth of the matter asserted." ***Commonwealth v. Fitzpatrick***, 255 A.3d 452, 471 (Pa. 2021) (citing Pa.R.E. 801(c)(1)-(2)) (ellipses and quotation marks omitted). "An out-of-court statement is not hearsay when it has a purpose other than to convince the fact finder of the truth of the statement." ***Commonwealth v. Busanet***, 54 A.3d 35, 68 (Pa. 2012).

Under the present sense impression exception to the rule against hearsay, a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it[,]" is admissible. Pa.R.E. 803(1); ***see also Croyle v. Smith***, 918 A.2d 142, 150 (Pa. Super. 2007) (stating the present sense impression exception "permits testimony of declarations concerning conditions or events observed by the declarant regardless of whether the event was exciting." (citation omitted)). The rationale for the present sense impression exception is that the "[r]elative immediacy of the declaration ensures that there will have been little opportunity for reflection or calculated misstatement." ***Commonwealth v. Coleman***, 326 A.2d 387, 389 (Pa. 1974); ***see also Commonwealth v. Hood***, 872 A.2d 175, 183 (Pa. Super. 2005) (stating that under the present sense impression exception, "the trustworthiness of the statement depends

upon the timing of the declaration." (citation omitted)). For example, a 911 call may qualify as a present sense impression if the statement is reported contemporaneously with the event, or is so instantaneous "that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation." ***Commonwealth v. Cunningham***, 805 A.2d 566, 573 (Pa. Super. 2002); ***see also Commonwealth v. Harris***, 658 A.2d 392, 395 (Pa. Super. 1995) (stating the present sense impression exception does not require that the comments be made to another person also present at the scene; rather, the comments may be made over the telephone).

Here, Appellant argues that the trial court erred in admitting Mack's text messages, as they constituted hearsay and were not admissible under the present sense impression exception. ***See*** Appellant's Brief at 11-18. Appellant claims "[Mack's] text messages were used for the truth of the matter asserted, and therefore, the messages are hearsay." ***Id.*** at 14; ***see also id.*** at 10 ("[Mack's] text messages were used for the truth of the matter asserted as they explained [that Mack] and Appellant were going to meet at a certain location."). Appellant maintains "[Mack's] text messages were the lynchpin to Appellant's presence [near the crime scene,] and that is the only purpose for their admission." ***Id.*** at 16.

According to Appellant, the trial court erred in ruling Mack's text messages were admissible under the present sense impression exception, since

- 10 -

[p]resent sense impressions need to be observed at the time of the event/condition or shortly thereafter. The statements in [Mack's text messages] … have nothing to do with an event or condition. [Mack's text messages'] admissibility fails in that regard.

*Id.* at 17. Appellant further contends that

[e]ven assuming *arguendo* that [Mack's text messages] were in relation to an event/condition, [Mack's] statements were made several hours before the event/condition occurred. The text messages (used for the truth of the matter asserted) were explaining that [Mack] and Appellant were going to meet at a certain location. The text[ messages] occurred between 10[:00]-11[:00] a.m. [on December 18, 2019.] The meeting between [Mack and Appellant later that day] did not occur until around 12[:00] p.m. [Mack's] statements could not be tested for their reliability since the event did not occur at the time of the statements.

*Id.* at 18.

Appellant cites our decision in *Hood*, 872 A.2d 175, wherein we stated

that

[t]he present sense impression exception, regardless of the availability of the declarant to testify at trial, allows the admission of "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter…." Pa.R.E. [] 803(1)…. **The observation must be made at the time of the event or shortly thereafter, making it unlikely that the declarant had the opportunity to form an intent to misstate his observation.**

Appellant's Brief at 16 (quoting *Hood*, 872 A.2d at 183 (emphasis added by

Appellant; citations modified)).

The Commonwealth counters that the trial court properly admitted

Mack's text messages, which were relevant and admissible **non-hearsay**

- 11 -

evidence.[5]  ***See*** Commonwealth's Brief at 18.  According to the Commonwealth, Mack's text messages "were admissible for reasons other than the truth of the matter asserted, *i.e.*, that [Mack] and [Appellant] met later that day[,] but to show that they were communicating on December 18, 2019." ***Id.*** at 19.

The Commonwealth cites this Court's decision in ***Williams***, 241 A.3d 1094.  ***See*** Commonwealth's Brief at 18.  In ***Williams***, a jury found the defendant guilty of first-degree murder and other offenses, related to the stabbing death of defendant's paramour (decedent).  ***Williams***, 241 A.3d at 1100.  During trial, the trial court admitted evidence, over defendant's hearsay objection, of numerous text messages (the texts) sent between defendant and decedent's respective cellular phones in the month leading up to the murder. ***Id.*** at 1099.  The trial court ruled the texts were admissible under the hearsay exception for admissions by a party-opponent, set forth in Pa.R.E. 803(25).[6]

---

[5] The Commonwealth does not address the admissibility of Mack's text messages under the present sense impression exception.  However, as we discuss further below, the Commonwealth argues, in the alternative, that Mack's text messages were admissible under another hearsay exception. ***See*** Commonwealth's Brief at 19-20.

[6] Rule 803(25) provides that the following statements are admissible under the exception:

**(25)** An Opposing Party's Statement.  The statement is offered against an opposing party and:

*(Footnote Continued Next Page)*

*Id.* at 1101. Defendant appealed and challenged the trial court's evidentiary ruling, arguing "that while the statements attributable to [defendant] may be admissions by a party-opponent pursuant to Pa.R.E. 803(25), the statements attributed to the decedent were not." *Id.* (citation, quotation marks, and brackets omitted).

This Court affirmed, initially noting that defendant did "not dispute the authenticity of the text[s]" and that the messages were a conversation between defendant and decedent prior to the murder. *Id.* at 1103. We held the trial court did not err in admitting the texts, as they were not hearsay. *Id.* at 1103-04. We specifically agreed with the trial court's finding that

> [decedent's] text messages were not being offered for the truth of [their] content, but rather to put [defendant's] text messages in context and to show his responses to [decedent], which showed [defendant's] state of mind and his anger towards [decedent].

---

> **(A)** was made by the party in an individual or representative capacity;
>
> **(B)** is one the party manifested that it adopted or believed to be true;
>
> **(C)** was made by a person whom the party authorized to make a statement on the subject;
>
> **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>
> **(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

Pa.R.E. 803(25).

*Id.* at 1104 (citation omitted); *see also id.* (determining that "the Commonwealth appears to have relied more upon the volume and frequency of the exchanges, not their content, to establish a relationship between" defendant and decedent).

Instantly, the trial court reasoned as follows in opining it properly admitted Mack's text messages:

> The statements by Mack as contained within [Mack's] text [messages] were admissible on [] two (2) grounds…. First, the statements were admissible as non-hearsay because they were relevant to establish contact between Appellant and Mack on the day of the homicide. *Williams*, 241 A.3d at 110[4] ([holding that t]he trial court properly admitted [decedent's] responsive text messages to [defendant] as non-hearsay. The Commonwealth was relying on the volume and frequency of the exchanges to establish a relationship between [defendant] and [decedent].) Alternatively, if offered for their truth, thereby implicating the rule against hearsay, the real-time nature of [Mack's] text [messages] satisfied the present sense impression exception. The [text messages] included information about [Appellant's and Mack's respective] current locations, ability to travel, and a desire to meet up later that day. Thus, the conversation was a contemporaneous exchange describing [Appellant's and Mack's] present situations.
>
> [At trial, the trial] court rejected Appellant's argument that discussion about future action prohibits admission [of Mack's text messages] under [the] present sense impression exception.[7] Nevertheless, the [trial] court agreed with Appellant that a

---

[7] At trial, Appellant argued that Mack's text messages were inadmissible under the present sense impression exception, as the messages 1) did not describe Mack's contemporaneously "seeing something or doing something at that time," as required by Rule 803(1); and 2) substantially referred to "[w]hat [Mack] is [] doing in the future, not what he's doing right now." N.T., 9/6-11/23, at 390, 396.

- 14 -

subsequent balancing test under Pa.R.E. 403[8] required the redaction of certain portions of the text [messages] exchange due to its prejudicial nature. Specifically, that the statements reproduced below would cause the jury to speculate as to their meaning. Thus, the [trial] court admitted Commonwealth Exhibit 287[, *i.e.*, the text messages,] with the following exchange redacted:

Mack: And what's up with what I gave you.

Appellant: On da north n it's goin [N-T] [*sic*] as fast as I would hope. Bt [*sic*] it's goin [2/4].

Mack: How much you got.

Appellant: 210

Mack: Where the rest. So you still got some.

Appellant: Yea like 2.

[N.T., 9/6-11/23,] at 404-05[; ***see also id.*** at 387-88].

Trial Court Opinion, 9/12/24, at 17-18 (footnotes added; some punctuation, citations, and capitalization modified).

We agree with the trial court that Mack's text messages were properly admitted as non-hearsay. The Commonwealth did not introduce Mack's text messages to prove the truth of the matters asserted therein; rather, it introduced this evidence to show that Mack and Appellant were in communication shortly prior to the murder. ***See Williams***, 241 A.3d at 1103-

_____

[8] Rule 403 provides that a trial court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

04; **Commonwealth v. Nabried**, 327 A.3d 315, 325 (Pa. Super. 2024) ("Supplying context is a non-hearsay purpose." (citations and brackets omitted)); **Busanet**, 54 A.3d at 68.

However, we disagree with the trial court's determination that Mack's text messages were admissible under the present sense impression exception. Mack's text messages were not "**describing or explaining an event or condition**, made while or immediately after [Mack] perceived it[.]" Pa.R.E. 803(1) (emphasis added); **see also Hood**, 872 A.2d at 183 (stating that present sense impression "observation[s] must be made at the time of the event or shortly thereafter[.]"). As the trial court explained, "[c]ollectively, the [text] messages were a conversation between Mack and Appellant wherein Mack asked about picking something up from Appellant and about meeting up later [that day] to do so." Trial Court Opinion, 9/12/24, at 15; **see also** N.T., 9/6-11/23, at 385-89 (detailing the text messages).

This Court's recent decision in **Trymbiski v. Trymbiski**, 318 A.3d 1285, 2495 EDA 2023 (Pa. Super. 2024) (unpublished memorandum), is instructive.[9] There, a mother (Mother) of three children (Children) filed a petition for protection from abuse (PFA) against Children's father (Father). **Id.** (unpublished memorandum at 1). Father and Mother were separated and shared physical custody of Children. **Id.** At a hearing on the PFA petition,

---

[9] Pursuant to Pa.R.A.P. 126(b), this Court's unpublished memorandum decisions filed after May 1, 2019 may be cited for their persuasive value.

Mother testified that Father 1) is an alcoholic and overconsumes alcohol; 2) frequently is abusive when intoxicated; and 3) "consistently drinks and drives with Children" in the vehicle. *Id.* (unpublished memorandum at 1-2). Mother further testified that the parties' 12 year-old daughter, A.T., has "an Apple watch,[10] and we have a code word, strawberries, to communicate when [Father] is intoxicated[ a]nd [Father] is going to put [Children] in the car, which he often does." *Id.* (unpublished memorandum at 3) (footnote added; citation omitted). According to Mother, A.T. sent her a text message wherein "[A.T.] contacted me with, strawberries, and said, Can you please come get us, can you please come get us[?]" *Id.* (unpublished memorandum at 3-4). Father's counsel raised a hearsay objection to Mother's testimony, which the trial court overruled. *Id.* (unpublished memorandum at 4, 5).

The trial court in ***Trymbiski*** granted mother a final PFA order, and Father appealed. *Id.* (unpublished memorandum at 7). Father argued, *inter alia*, that "the trial court improperly considered hearsay evidence when it considered A.T.'s text to Mother of the codeword 'strawberries,' which signaled that Father was drinking and trying to drive with Children." *Id.* (unpublished memorandum at 10) (citation omitted). This Court disagreed and held that A.T.'s text message was admissible under the present sense impression

---

[10] A.T.'s Apple watch enabled her to send text messages. ***Trymbiski***, ***supra*** (unpublished memorandum at 4).

exception. *Id.* (unpublished memorandum at 11-12). We reasoned as follows:

> A.[T]. texted the codeword "strawberries" to Mother **to describe [A.T.'s] observations of Father at the time of the event**, which prompted Mother to retrieve Children. Thus, the statement falls within the present sense impression exception to the hearsay rule.

*Id.* (unpublished memorandum at 11-12) (emphasis added). We further stated that because "the evidence was sufficient [to establish grounds for the issuance of a PFA order], regardless of whether [Father] was intoxicated at th[e] particular time" of A.T.'s text message, any "error in admitting [this evidence] was therefore harmless." *Id.* (unpublished memorandum at 12).

In the instant case, unlike the situation in *Trymbiski*, Mack's text messages **were not describing Mack's observations of any event or condition**. Further, we cannot agree with the trial court that "the real-time nature of [Mack's] text [messages] satisfied the present sense impression exception." Trial Court Opinion, 9/12/24, at 17. This reasoning could lead to the absurd result that **all** text messages, sent in real-time, could be admissible under the present sense impression exception.[11]

_____

[11] Our research discloses that the present sense impression exception is most commonly used to admit evidence of 911 calls, or other statements by eyewitnesses/victims to a crime or event giving rise to litigation, made during or immediately after their observing an event or condition. *See*, *e.g.*, *Cunningham*, 805 A.2d at 573 (holding 911 calls were admissible under the present sense impression exception); *Hood*, 872 A.2d at 184 (same); *see also Croyle*, 918 A.2d at 150 (holding that the hearsay statements of a motor
*(Footnote Continued Next Page)*

Nevertheless, we are persuaded by the Commonwealth's argument that

> even if [Mack's] text messages were categorically hearsay, … they fall within the "recognized exception to the rule barring admission of hearsay testimony for those out-of-court declarations which are offered to prove the declarant's state of mind."

Commonwealth's Brief at 19-20 (quoting **Commonwealth v. Williams**, 410 A.2d 880, 887 (Pa. Super. 1979)). The Commonwealth points out that pursuant to Pa.R.E. 803(3), the following statements are admissible:

> [a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Commonwealth Brief at 20 (quoting Pa.R.E. 803(3)).

The Pennsylvania Supreme Court has explained the state of mind exception as follows:

> Where the declarant's out-of-court statements demonstrate his or her state of mind, are made in a natural manner, and are material and relevant, this Court has held that the statements may be admitted. [**Commonwealth v.**] **Riggins**[, 386 A.2d 520, 526 (Pa. 1978)]; **Commonwealth v. Thomas**, … 189 A.2d 255[, 260 (Pa. 1963)], **cert. denied**, 375 U.S. 856, 11 L. Ed. 2d 83, 84 S. Ct. 118 (1963). …. **On several occasions, we have held that a deceased victim's out-of-court statements evincing an intent to meet the defendant shortly before the killing were admissible pursuant to the state of mind exception** because such an intent provided circumstantial evidence that the victim did meet with the defendant. [**Commonwealth v.**] **Lowenberg**[,

---

vehicle accident eyewitness to a police officer, which the eyewitness made over ten minutes after the accident, did not constitute a present sense impression and lacked the requisite immediacy).

392 A.2d 1274, 1279 (Pa. 1978)] (victim told third person that she wanted to see the defendant concerning a serious financial matter); **Riggins**[, 386 A.2d at 526] (victim told third party that she expected defendant to visit her home); [**Commonwealth v.**] **Marshall**[, 135 A. 301, 304-05 (Pa. 1926)] (victim told third party that she was going to meet defendant and would disclose her affair with another man); **see also Commonwealth v. Sneeringer**, … 668 A.2d 1167[, 1171 (Pa. Super.] 1995), **appeal denied**, … 680 A.2d 1161 ([Pa.] 1996) (victim told third parties that she intended to end her relationship with the defendant); **Commonwealth v. Henderson**, 472 A.2d 211[, 214-15] ([Pa. Super.] 1984) (victim told third parties that he intended to meet with defendant to sell his automobile). In each case, the victim's intent to meet the defendant was relevant[12] to the case because **it permitted the jury to conclude that the defendant had the opportunity to commit the crime in question.**

**Commonwealth v. Collins**, 703 A.2d 418, 425 (Pa. 1997) (emphasis and footnote added; formatting modified).

Based upon the foregoing, we conclude that the trial court did not err in admitting Mack's text messages under a hearsay exception, albeit on a different basis. **See id.**; **Williams**, 241 A.3d at 1103-04; **Commonwealth v. Edwards**, 903 A.2d 1139, 1157 n.19 (Pa. 2006) ("[W]e may affirm a trial court's evidentiary ruling if we deem it to have been correct on grounds other than those specified by the court itself, particularly where the additional reason is apparent from the record." (citations omitted)).[13]

---

[12] Pennsylvania Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402.

[13] We reiterate that the trial court correctly determined that Mack's text messages were not admitted for the truth of the matters asserted therein. *(Footnote Continued Next Page)*

Nevertheless, even if, *arguendo*, the trial court erred in admitting Mack's text messages, such error was harmless and entitles Appellant to no relief. "Even when evidence is wrongfully admitted, [] such error is subject to harmless error analysis." ***Commonwealth v. Bieber***, 283 A.3d 866, 877 (Pa. Super. 2022) (citation omitted); ***see also Jackson***, 283 A.3d at 817 ("[F]or a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party."). "An error may be deemed harmless, *inter alia*, where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." ***Commonwealth v. Moore***, 937 A.2d 1062, 1073 (Pa. 2007).

Here, the trial court stated in its opinion that

> [i]n light of the quantity and quality of the Commonwealth's evidence establishing Appellant's actions before, during, and after the shooting and the forensic evidence connecting him to the crime, if error is found, it should be deemed harmless error.

Trial Court Opinion, 9/12/24, at 19.

The trial court elaborated on the evidence presented at trial:

> Collectively, the Commonwealth's evidence presented a blueprint of Appellant's actions establishing that he committed the charged crimes. Through phone records, cell site data, and testimony from Strong, the Commonwealth established that **Appellant was in communication with Mack leading up to the incident and that Appellant's cell phone was in the immediate area at the time of the shooting**. Like a trail of breadcrumbs, police

---

***See*** Trial Court Opinion, 9/12/24, at 17; ***Williams***, 241 A.3d at 1103-04; ***Busanet***, 54 A.3d at 68.

tracked snowy footprints for approximately a quarter mile from the scene [of the shooting] to the Tower[,] where Appellant was signed in as a visitor. Tower surveillance footage showed bags being dropped from an apartment window at 2:40 p.m. on the same side of the building where Appellant's grandmother's apartment was located. The bags were immediately retrieved by [a male] who exited the building. This [male] then traveled on foot. Residential cameras captured the [male's] movements towards the crime scene, and [subsequently, him] re-entering the lobby of the Tower at 3:02 p.m. [The Tower's i]nterior cameras tracked [the male] as he took an elevator to the second floor, and then carried all black clothing, shoes, and a backpack to the trash chute. After exiting the room [containing the] trash chute, the male reappeared without any of those items. Within hours, those same items [were] retrieved by police from the [Tower's] dumpster[,] and it was later determined [that] **gunshot residue was present on the jeans and the sweatshirt**. In addition, the backpack had blood stains. It was further determined that **the blood stains on the backpack were a DNA match to Appellant**. This same male left the Tower around 4:00 p.m. on December 18, 2019[,] where he was picked up by an Uber [driver, Hawkins]. [Hawkins] identified the passenger as Appellant and testified that he drove [Appellant] to what turned out to be Appellant's residence in Pitca[ir]n.

Trial Court Opinion, 9/12/24, at 23-24 (emphasis added). The trial court concluded that "viewing the evidence in the light most favorable to the Commonwealth, the jury had more than sufficient evidence to support their finding that Appellant was the person responsible for shooting Mack and Strong and tampering with evidence." *Id.* at 25.

We agree with the trial court's conclusion that even if the court erred in admitting Mack's text messages, 1) any error was harmless in light of other, overwhelming evidence that established Appellant's guilt; and 2) the prejudicial effect of the error was so insignificant that it did not contribute to

the verdict.  **See Moore**, 937 A.2d at 1073; **Trymbiski**, **supra** (unpublished memorandum at 12).

Based on the foregoing, Appellant's sole issue does not merit relief.  We thus affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/21/2025